HELLER EHRMAN LLP
Joseph Angland (JA-6607)
Kenneth Kirschner (KK-0252)
August T. Horvath (AH-8776)
7 Times Square
New York, New York 10036
Tel.: (212) 832-8300
Fax: (212) 763-7600

Attorneys for Defendant Girl Scouts of the United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                                :
MDM BUSINESS TECHNOLOGIES, INC.,                                :
                                                                :
                            Plaintiff,                          :
                                                                :     No.: 07-CV-7477 (WHP)
            v.                                                  :
                                                                :
GIRL SCOUTS OF THE UNITED STATES OF                             :
AMERICA; and DIGITAL PRODUCTS, INC.,                            :
                                                                :
                            Defendants.                         :
                                                                :
                                                                :
----------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANT GIRL SCOUTS OF
THE UNITED STATES OF AMERICA
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

# TABLE OF CONTENTS

**Page**

Table of Authorities ......................................................................................................... ii

Preliminary Statement ......................................................................................................1

Statement of Facts ...........................................................................................................1

Argument ........................................................................................................................4

    I.     The Federal Antitrust Claims Must Be Dismissed ................................................4

          A.      MDM Alleges No Violation of Section 1 of the Sherman Act...................6

                  1.     MDM Fails Adequately to Allege Concerted Action .....................6

                  2.     MDM Does Not Allege an Unreasonable Restraint of Trade..........7

          B.      MDM Alleges No Violation of Section 2 of the Sherman Act...................9

                  1.     MDM Alleges No Monopolization under Section 2 of the Sherman Act.........................................................................................9

                  2.     MDM Alleges No Attempted Monopolization under Section 2 of the Sherman Act .......................................................12

                  3.     MDM Alleges No Conspiracy to Monopolize under Section 2 of the Sherman Act ...................................................................13

    II.    The Donnelly Act Claims Must Be Dismissed...................................................14

    III.   The State Law Counts Should Be Dismissed for Lack of Subject Matter Jurisdiction When the Federal Antitrust Counts Are Dismissed ..........................16

    IV.   Count V Must Be Dismissed Because MDM Does Not Allege a Contract Creating Any Implied Covenant of Good Faith.....................................................17

    V.    MDM's Fraud Claim Must Be Dismissed ..........................................................18

          A.      MDM Does Not Plead the Required Elements of Fraud ...........................18

          B.      MDM Fails to Plead Fraud with the Requisite Particularity.....................22

    VI.   All Claims Must Be Dismissed Because MDM Alleges No Injury Caused By GSUSA's Actions .........................................................................................23

Conclusion .....................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AD/SAT v. Associated Press,* 181 F.3d 216 (2d Cir. 1999) ...........................................13

*Aetna Ca. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566
(2d Cir. 2005).........................................................................................................20, 21, 22

*Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991) ....................................24

*Altman v. Bayer Corp.*, 125 F. Supp. 2d 666 (S.D.N.Y. 2000) ....................................14

*Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332 (1982) ....................................7

*Assocs. Capital Servs. Corp. of N.J.  v. Fairway Private Cars, Inc.*,
590 F. Supp. 10 (E.D.N.Y. 1982) ...................................................................14

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .............................................4, 6, 7

*Bello v. Cablevision Sys. Corp.*, 587 N.Y.S.2d 1 (N.Y. App. Div. 2d Dep't 1992) .....................14

*Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc.*,
823 N.Y.S.2d 79 (N.Y. App. Div. 2d Dep't 2006) ....................................14, 15

*Berman v. Riverbay Corp.*, No. 89 Civ. 5538 (WK), 1990 WL 116765 (S.D.N.Y. March
29, 1990) ...................................................................................................16

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) ...........................10

*Brass v. Am. Film Tech., Inc.*, 987 F.2d 142 (2d Cir. 1993)...........................................21

*Bright v. Moss Ambulance Serv.*, 824 F.2d 819 (10th Cir. 1987)....................................9

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ................................................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) .............................9

*Capital Imaging Assocs., P.C.  v. Mohawk Valley Med. Assocs.*,
996 F.2d 537 (2d Cir. 1993)...........................................................................6

*Caplan v. Unimax Holdings Corp.*, 591 N.Y.S.2d 28
(N.Y. App. Div. 1st Dep't 1992) ...................................................................18

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000) .................................... 24

*Congress Financial Corp. v. John Morrell & Co.*, 790 F. Supp. 459
 (S.D.N.Y. 1992) ......................................................................................................... 20

*Conley v. Gibson,* 355 U.S. 41 (1957) .............................................................................. 4

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977) ............................................. 8

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) ................................................................ 22

*Creative Trading Co., Inc. v. Larkin-Pluznick-Larkin, Inc.*, 523 N.Y.S.2d 102 (N.Y. App.
 Div. 1st Dep't 1988) ................................................................................................... 16

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384 (1995) ................................................... 17

*DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242 (2d Cir. 1987) ....................... 22

*Discon, Inc. v. Nynex Corp.*, No. 90-CV-546A, 1992 WL 193683
 (W.D.N.Y. June 23, 1992) ........................................................................................... 8

*Discon, Inc. v. Nynex Corp.*, 93 F.3d 1055 (2d Cir. 1996). ............................................. 8

*Discon, Inc. v. Nynex Corp.*, 525 U.S. 128 (1998) ........................................................... 8

*Discon, Inc. v. Nynex Corp.*, 86 F. Supp. 2d 154 (W.D.N.Y. 2000) .................... 8, 9, 10

*Donovan v. Aeolian Co.*, 270 N.Y. 267 (1936) ............................................................... 21

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173
 (S.D.N.Y. 2006), ......................................................................................................... 15

*Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*,
 172 F. Supp. 2d 1060 (S.D. Ind. 2001) ...................................................................... 24

*Giant Group, Ltd. v. Sands*, 142 F. Supp. 2d 503 (S.D.N.Y. 2001) ............................... 17

*Giant Paper & Film Corp. v. Albemarle Paper Co.*, 430 F. Supp. 981
 (S.D.N.Y. 1977) ......................................................................................................... 11

*Golden Buddha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196
 (2d Cir. 1991) ............................................................................................................. 20

*Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000) .......................................................... 17

*Grain Traders v. Citibank, N.A.*, 960 F. Supp. 784 (S.D.N.Y. 1997) ............................ 18

iii

*Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 997 F. Supp. 340 (E.D.N.Y. 1998) ..............14

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391 (7th Cir. 1993)............24

*H.L. Hayden Co. v. Siemens Med. Sys.*, 879 F.2d 1005 (2d Cir. 1989) .........................................12

*Idrees v. Am. Univ. of Caribbean*, 546 F. Supp. 1342 (S.D.N.Y. 1982) ......................................19

*In re Elevator Antitrust Litig.*, Docket No. 06-3128-cv, 2007 WL 2471805 (2d Cir. 2007)..........6

*In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000)............................................24

*Int'l Television Prods. Ltd. v. Twentieth Century-Fox Television Div. of Twentieth Century Fox Film Corp.*, 622 F. Supp. 1532 (S.D.N.Y. 1985) .................................................................................................16

*Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112 (1969)............................................19

*Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250 (S.D.N.Y. 1995) .....................................10

*Laub v. Faessel*, 745 N.Y.S.2d 534 (N.Y. App. Div. 1st Dep't 2002) .........................................24

*Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465 (S.D.N.Y. 2001) ...........................................10

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504 (S.D.N.Y. 1989) ...............18

*Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361 (E.D.N.Y. 2002)...................................11

*Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991)............................................................18

*Murray v. Xerox Corp.*, 811 F.2d 118 (2d Cir. 1987)...................................................................20

*Nat'l Soc. of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978) .................................................8

*Newsday, Inc. v. Fantastic Mind*, 655 N.Y.S.2d 583 (N.Y. App. Div. 2d Dep't 1997) ................................................................................................14

*Oceanus Beverages, Inc. v. Van Munching & Co.*, 168 N.Y.S.2d 204 (N.Y. App. Div. 2d Dep't 1957) ................................................................................................15

*Payday Advance Plus, Inc. v. Findwhat.com Inc.*, 478 F. Supp. 2d 496 (S.D.N.Y. 2007) ................................................................................................................18

*Re-Alco Indus. v. Nat'l Ctr. for Health Educ.*, 812 F. Supp. 387 (S.D.N.Y. 1993)......................15

iv

*Rome Ambulatory Surgical Ctr., LLC v. Rome Mem'l Hospital, Inc.*,
349 F. Supp. 2d 389 (N.D.N.Y. 2004) ............................................................13

*Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62 (1978) .........................................17

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87
(2d Cir. 1983) .................................................................................................15, 16

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) .........................................13

*State of New York v. Mobil Oil Corp.*, 381 N.Y.S.2d 426 (1976) .................................16

*Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 517 N.Y.S.2d 764
(N.Y. App. Div. 2d Dep't 1987) ...................................................................18

*Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594 (1953) .............................13

*Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90 (2d Cir. 1998) ....................6, 7, 13

*Transamerica Computer Co. v. IBM Corp.*, 698 F.2d 1377 (9th Cir. 1983) .................13

*TV Communs. Network, Inc. v. Turner Network Television, Inc.*,
964 F.2d 1022 (10th Cir. 1992) ...................................................................12

*Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566 (2d Cir. 1990).................13

*United Air Lines v. Austin Travel Corp.*, 867 F.2d 737 (2d Cir. 1989) .......................11

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)...................................................16

*United States v. Eastman Kodak Co.*, 853 F. Supp. 1454 (W.D.N.Y. 1994)................11

*United States v. Grinnell Corp.,* 384 U.S. 563 (1966)...........................................10, 12

*United States v. Topco Assocs.*, 405 U.S. 596 (1972)....................................................7

*United States v. Yellow Cab Co.*, 332 U.S. 218 (1947) ................................................14

*Verizon Communs. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004).........................................................................................9

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,
857 F.2d 55 (2d Cir. 1988)...........................................................................14

*Wall St. Transcript Corp. v. Ziff Communs. Co.*, 638 N.Y.S.2d 640...........................24

*Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510 (7th Cir. 1992) ............................................12

*X.L.O. Concrete Corp. v. Rivergate Corp.,* 83 N.Y.2d 513, 518 (1994) ......................................15

## FEDERAL STATUTES

15 U.S.C. § 1 ................................................................................................................3, 5

15 U.S.C. § 2 ......................................................................................................................5

15 U.S.C. § 3 ......................................................................................................................5

15 U.S.C. § 13a ..................................................................................................................5

15 U.S.C. § 14 ....................................................................................................................5

15 U.S.C. § 15 ....................................................................................................................3

15 U.S.C. § 18 ....................................................................................................................5

## STATE STATUTES

Donnelly Act, N.Y. Gen. Bus. Law § 340 .........................................................3, 14, 16

## FEDERAL RULES

Federal Rule of Civil Procedure 12(b)(6) .....................................................................1

Defendant Girl Scouts of the United States of America ("GSUSA") respectfully submits this Memorandum Of Law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim on which relief can be granted.

## Preliminary Statement

Plaintiff MDM Business Technologies Group, Inc. ("MDM") was an unsuccessful bidder in response to a 2004 Request for Proposals ("RFP") to supply defendant GSUSA with leased photocopying equipment. Defendant Digital Products, Inc. ("DPI") was the successful bidder. This entire case rests on the premise that it was actionable for GSUSA to award the contract to DPI rather than to MDM.

Simply put, MDM lost out in a competitive bidding process that it does not believe was fair. GSUSA denies many of the facts alleged by MDM, but for purposes of this motion only, GSUSA accepts MDM's allegations in the Complaint as True. However, even accepting all of MDM's factual allegations as true, they do not state a cause of action under antitrust, under a theory of breach of the implied covenant of good faith, or under fraud. There is no duty for GSUSA to create a bidding process that provides a "level playing field" or that gives MDM an equal chance of winning. Businesses are generally free to purchase from the suppliers of their choice, even if—as MDM claims here—a superior supplier was available. Accordingly, MDM has failed to plead the requisite elements of any of its asserted causes of action, and this suit should be dismissed in its entirety.

## Statement of Facts

GSUSA is a nonprofit corporation headquartered in New York. *See* Complaint ¶ 3. In 2004, GSUSA solicited updated and upgraded photocopying equipment for its staff at its national headquarters at 420 Fifth Avenue in New York City. *See* Complaint ¶ 13. GSUSA considered its needs and in June 2004 issued to various suppliers a request for proposals (RFP) for the lease

1

of replacements for the office's main bulk photocopier, its color photocopier, and a number of convenience photocopiers located throughout the office. *See* Complaint ¶ 13; Exhibit 1 to Complaint. The RFP sought proposals for a 60-month lease for a total of 13 copiers and ancillary equipment such as a binder and coil inserter, plus service plans, installation, and training of GSUSA employees. The RFP listed detailed performance specifications for the equipment and specified that the offer must include buy-out of the existing equipment leases, which would be terminated early at a cost of $40,000. *See* Complaint ¶¶ 13-15.

GSUSA's RFP was sent to various suppliers, specifying a response date of June 14, 2004. Proposals were submitted in response by suppliers DPI, MDM, Canon, Xerox, and Mita. *See* Complaint ¶ 13. During the period between the issuance of the RFP and the deadline for proposals, MDM's Vice President, Charles Clarke, repeatedly contacted GSUSA's Manager of National Properties/Office Services, Eric Hill, to object that MDM could not obtain equipment meeting the specifications and to attempt to convince Mr. Hill that the requirements worked out by GSUSA were not what GSUSA really wanted or needed. *See* Complaint ¶ 28; Exhibits 2, 3, 4, 6 to Complaint. GSUSA replied to these communications, generally stating that GSUSA had considered its requirements and planned generally to stick with them, and noting that GSUSA was aware of available equipment that met the requirements. *See* Complaint ¶¶ 29, 30. MDM submitted its bid on June 10, 2004. *See* Complaint ¶ 41-42; Exhibit 11 to Complaint. On June 28, 2004, after bids had been received, Mr. Clarke prepared a memo to GSUSA laying out an alternative set of specifications that MDM felt would better serve GSUSA's needs and that MDM could provide. *See* Complaint ¶ 31-32; Exhibit 5 to Complaint. GSUSA took MDM's ideas into consideration, but did not formally change its requirements. *See* Complaint ¶¶ 37, 38.

MDM's bid was selected as one of the finalists among responses to the RFP. GSUSA agreed to allow each finalist to install one of its proposed copiers on a trial basis at GSUSA's offices to test the vendors' equipment, installation, service, and training. The trial of MDM's copier took place from September 24 to October 1, 2004. *See* Complaint ¶¶ 52, 53; Exhibits 7, 9 to Complaint. After evaluating the equipment proffered, the fit between the equipment and GSUSA's requirements, the performance of both the equipment and the vendors' personnel during the September 2004 competitive trials, and the economics of each proposal, GSUSA selected DPI as the successful bidder. *See* Complaint ¶¶ 34, 52, 63.

MDM continued to be a supplier of other office equipment for GSUSA at other locations. *See* Complaint ¶ 12. GSUSA maintained a working relationship with MDM. *See* Complaint ¶¶ 10, 12. Shortly after the expiration of MDM's other contracts with GSUSA, however, MDM filed this lawsuit challenging the award of the 2004 contract to DPI.

In its Complaint in this case, MDM seeks relief under six Counts. Count I purports to state a claim against GSUSA for "anticompetitive practices in restraint of trade or commerce" in violation of the Sherman and Clayton Acts, 15 U.S.C. § 1 et seq. and 15 U.S.C. § 15 et. seq., based on the alleged structuring of the RFP by GSUSA to favor DPI. Count II purports to state a claim against GSUSA for "anticompetitive practices in restraint of trade or commerce" in violation of the Donnelly Act, NY Gen. Bus. Law § 340 et seq., based on the same actions. Count III, like Count I, purports to state a claim for "anticompetitive practices in restraint of trade or commerce" in violation of the Sherman and Clayton Acts, 15 U.S.C. § 1 et seq. and 15 U.S.C. § 15 et. seq., this time against both GSUSA and DPI for conspiring in the previously alleged actions and in the subsequent relaxation of certain RFP requirements. Count IV purports to state a claim under the Donnelly Act against both defendants for "anticompetitive practices in

restraint of trade or commerce" under the same conspiracy allegation. Count V purports to state

a claim for breach of " the implied covenant of good faith" because of GSUSA's alleged

structuring of the RFP to favor DPI, its alleged refusal to change its specifications as desired by

MDM, and its alleged subsequent failure to inform MDM of changed or waived conditions in the

RFP. Count VI purports to state a claim for fraud, alleging that GSUSA concealed from MDM

that conditions of the RFP were changed or waived for DPI, the successful bidder.

## Argument

### I.    THE FEDERAL ANTITRUST CLAIMS MUST BE DISMISSED

Counts I and III are almost identical; they differ only in that Count I is asserted only

against GSUSA whereas Count III is asserted against both GSUSA and DPI and alleges

concerted conduct between them. Each count alleges that the defendants engaged in "anti-

competitive practices in restraint of trade or commerce," with no further specification of the type

of antitrust violation alleged. Complaint ¶¶ 87, 90, 94, 98. The federal antitrust laws are

structured in such a way that they permit the allegation only of specified causes of action. Each

of these causes of action arises under a specific statutory provision and consists of elements of a

claim that have been well settled through decades of antitrust jurisprudence. The elements of

these offenses must be pled, with supporting factual allegations, in order to "give the defendant

fair notice of what the ... claim is and the grounds upon which it rests" and to survive a motion to

dismiss. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007), *quoting Conley v.

Gibson,* 355 U.S. 41, 47 (1957). There is no catch-all provision that permits a plaintiff merely to

allege, without further elaboration, that a particular course of conduct is anticompetitive,

restrains trade, or diminishes competition.

4

MDM's Complaint, however, does not identify which substantive antitrust provision was allegedly violated. It alleges a violation of the Sherman Act and the Clayton Act (which between them are virtually the entirety of federal antitrust statutes), citing the acts in their entirety, rather than any of the distinct sections of those acts that create distinct offenses with distinct elements. This is no more acceptable than alleging a violation of the United States Constitution without specifying the clause or amendment that was violated or alleging a "tort" without specifying which one. As a result, several necessary elements of antitrust claims that courts have held must be pled *with supporting factual allegations* to survive a motion to dismiss are entirely absent from the Complaint, even in conclusory form which would itself be inadequate.

Although it is not the defendant's burden to tease the underlying claims out of an inadequately pled complaint, GSUSA has considered, and discusses below, the federal antitrust claims that MDM might have intended to plead in its Complaint. There are only two plausible possibilities: Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.[1] Section 4 of the Clayton Act creates a private damages action for those injured by reason of a violation of the Sherman Act, and as best GSUSA can ascertain, that is why the Clayton Act is referenced. GSUSA assumes that Count III, which refers to concerted conduct, purports to state a violation of Sherman Act Section 1; by default, GSUSA assumes that Count I purports to state a claim

---

[1] Other provisions of the Sherman and Clayton Acts prohibit specific additional types of competitive behavior, such as anticompetitive activities within the District of Columbia, 15 U.S.C. § 3, price discrimination, 15 U.S.C. § 13a, and anticompetitive mergers and acquisitions, 15 U.S.C. § 18, but only the provisions of Sections 1 and 2 of the Sherman Act have plausible relevance to this case. Section 3 of the Clayton Act, 15 U.S.C. § 14, prohibits the sale or lease of goods or services conditioned upon the lessee's or purchaser's agreement not to use or deal in the goods and services of a competitor of the seller, where the effect of the agreement may be substantially to lessen competition or tend to create a monopoly, but this section would be inapplicable under the facts pled by MDM because GSUSA not only remained free to, but did in fact, continue to use MDM's services after the award of the 2004 bid to DPI. *See* Complaint ¶¶ 10-12.

under Section 2 of that Act. Based on the facts alleged, MDM not only has not pled an antitrust

violation but also cannot plead one, because the alleged acts undertaken by GSUSA and DPI and

the alleged injury suffered by MDM do not establish a violation of the antitrust laws.

### A.    MDM Alleges No Violation of Section 1 of the Sherman Act

To establish a violation of Section 1 of the Sherman Act, a plaintiff must establish: "(1) a

combination or some form of concerted action between at least two legally distinct economic

entities; and (2) [that] such combination or conduct constituted an unreasonable restraint of trade

either *per se* or under the rule of reason.'" *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90,

95-96 (2d Cir. 1998)*, citing Capital Imaging Assocs., P.C.  v. Mohawk Valley Med. Assocs.*, 996

F.2d 537, 542 (2d Cir. 1993). MDM's Complaint fails adequately to allege either of these

elements.

### 1.    MDM Fails Adequately to Allege Concerted Action

Count III, subheaded "Conspiracy under the Sherman and Clayton Acts," alleges that

"DPI conspired, colluded and/or acted in concert with Girl Scouts … to engage in

anticompetitive practices in restraint of trade or commerce" by allegedly designing the RFP to

favor a single bidder and allegedly subsequently waiving contract terms for that bidder. The

words "conspiracy," "collude," and "concert" are not sufficient. In *Bell Atlantic Corp. v.

Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court held with respect to a Section 1 conspiracy

claim that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do. Factual allegations must be enough to raise a right to relief above the

speculative level." *Id*. at 1964-65 (internal quotations and citations omitted); *see also In re

Elevator Antitrust Litig.*, Docket No. 06-3128-cv, 2007 WL 2471805 at *2 (2d Cir. Sept. 4,

2007).  "In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 127 S. Ct. at 1965.

The conduct alleged in Count III—"[GSUSA's] knowing design of the RFP to favor a single bidder, the discriminatory terms of the RFP, [and] the waiver and forgiveness of material bid terms for the benefit of DPI, including the requirement of network attachment and the $40,000 buyout, waivers not made available to other bidders including MDM"—is on its face all unilateral conduct by GSUSA.  Basically, the claim is that GSUSA was biased toward DPI.  That, however, is unilateral conduct, not concerted conduct.  MDM nowhere alleges that GSUSA and DPI communicated or reached any agreement regarding the terms of GSUSA's RFP to disadvantage MDM or for any other purpose.

## 2.    MDM Does Not Allege an Unreasonable Restraint of Trade

Even if  MDM's Complaint sufficiently alleged concerted action, Count III would still be insufficient because it does not plead the second element of a Section 1 violation:  "an unreasonable restraint of trade either per se or under the rule of reason." *Tops Mkts.*, 142 F.3d at 96.  An agreement between a supplier and a customer that the customer will favor the supplier over others has been held specifically not to constitute an unreasonable restraint for purposes of Section 1.

Violations of Section 1 fall into two broad categories.  Certain types of agreements, such as arrangements between competitors to fix prices and certain group boycotts, have been regarded as so universally anticompetitive that they are treated as unlawful *per se* without the need to analyze the market impact of the conduct or to consider pro-competitive justifications that the defendants might advance.  *See Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 354 (1982); *United States v. Topco Assocs.*, 405 U.S. 596, 608 (1972).  All other types of

agreements are subject to analysis under the rule of reason, in which the harm to competition caused by the alleged agreements, if any, is balanced against pro-competitive benefits. *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978); *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977). A recent series of decisions makes clear that a customer's agreement to favor one supplier over another is not unreasonable under either test. *See Discon, Inc. v. Nynex Corp.*, No. 90-CV-546A, 1992 WL 193683 (W.D.N.Y. June 23, 1992), *aff'd in part and rev'd in part*, 93 F.3d 1055 (2d Cir. 1996), *vacated and remanded*, 525 U.S. 128 (1998), *remanded*, 184 F.3d 111 (2d Cir. 1999), *on remand*, 86 F. Supp. 2d 154 (W.D.N.Y. 2000).

Plaintiff Discon was a provider of telecommunication equipment removal services that alleged that its main customer, Nynex, conspired with AT&T Technologies, one of Discon's competitors, to disadvantage Discon in bidding for equipment removal business, effectively directing business to AT&T Technologies and away from Discon, and that Nynex "treated Discon unfairly" in other ways. 1992 WL 193683 at *2-3. On appeal from a finding by the district court that an "agreement" by a customer to do business with one among competing suppliers merely reflects unilateral action and cannot constitute an antitrust conspiracy, the Second Circuit held that such an agreement "may be characterized as a horizontal restraint of trade if the agreement seeks to disadvantage the direct competitor (*e.g.,* Discon) of one of the conspiring firms." *Discon*, 93 F.3d at 1060. The Supreme Court resoundingly held, however, that such an "agreement" cannot be held *per se* unlawful, and on remand, the district court concluded that the alleged arrangement between customer and supplier to disadvantage a competing supplier does not violate Section 1 under the rule of reason because the agreement complained of affects only the disfavored competitor(s), and does not harm competition or

consumers.  *See Discon*, 86 F. Supp. 2d at 163 (dismissing because "Discon has failed to demonstrate an actual market-wide adverse effect on competition resulting from NYNEX's conduct").  *See also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) ("The antitrust laws … were enacted for 'the protection of competition, not competitors.'"), *quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).

In rejecting the same theory pled here by MDM, the *Discon* court observed that "not every bad act committed in business gives rise to an antitrust claim."  86 F. Supp. 2d at 165. Like Discon, MDM fails to allege any actions by the alleged conspirators that harmed competition or consumers, as opposed to merely MDM itself.  The fact that GSUSA allegedly took actions that advantaged DPI as a prospective supplier and disadvantaged MDM is irrelevant to the harm to *competition* that must be alleged for MDM's claims to survive a motion to dismiss.

### B.   MDM Alleges No Violation of Section 2 of the Sherman Act

#### 1.   MDM Alleges No Monopolization under Section 2 of the Sherman Act

Section 2 of the Sherman Act, 15 U.S.C. § 2, prohibits the monopolization of a relevant market in trade or commerce, as well as certain related violations discussed below.  The offense of monopolization has two elements:  (1) possession of monopoly power in a relevant market and (2) the use of exclusionary means to acquire or maintain such power.  *See Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  The first element is, in actuality, two-pronged; a plaintiff must prove that (1) a relevant market or markets exist; and (2) that the defendant had market power or monopoly power in the relevant market or markets.  *See Bright v. Moss Ambulance Serv., Inc.*, 824 F.2d 819, 823 (10th Cir. 1987).

MDM has not pled either of these elements.  MDM has not alleged any relevant market or that GSUSA has monopoly power in any relevant market.  MDM also has not alleged that any

9

actions undertaken by GSUSA were exclusionary acts done to acquire or maintain monopoly power.  Therefore, any purported monopolization claim must be dismissed.

### a.  MDM Has Not Defined a Relevant Market

"In order to survive a motion to dismiss, a claim under Sections 1 and 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized. … Under *United States v. Grinnell Corp.,* 384 U.S. 563(1966)*,* [a plaintiff's] inadequate market definition alone requires dismissal."[2]  *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 254-55 (S.D.N.Y. 1995), *citing Grinnell*, 384 U.S. at 570-71.  To be adequate, a plaintiff's market definition must do more than merely identify a type of product and a geographic territory.  The alleged relevant market must be plausible; i.e., it cannot exclude reasonably interchangeable products or geographic areas to which buyers might reasonably turn. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (dismissing complaint where plaintiffs failed to allege that the purported geographic market was "the area of effective competition in which buyers … can find alternative sources of supply, or that there are no other goods or services that are reasonably interchangeable …within this geographic market"); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001) ("failure to define a viable product market with reference to the rule of reasonable interchangeability is alone grounds for dismissal").

---

[2] This same requirement to plead a relevant market also exists for rule-of-reason offenses under Section 1 of the Sherman Act, discussed above, and the arguments made here with respect to MDM's failure to plead a relevant market also provide additional grounds to dismiss any such claims that can be divined from its Complaint.  *See Discon*, 86 F. Supp. 2d at 159-63 (dismissing on alternative grounds because of plaintiff's failure to define a relevant market in a rule of reason Section 1 claim).

The Complaint does not allege a relevant market, much less the facts needed to support such a market for antitrust purposes. This mandates dismissal of all of MDM's antitrust claims.

### b. MDM Has Not Alleged Monopoly Power in a Relevant Market

To plead a Section 2 monopolization claim, the plaintiff must then allege that a defendant possesses monopoly power in that relevant market, again with supporting allegations laying out the factual basis for the assertion. To plead monopoly power, a plaintiff must generally plead that the defendant has at least 50% share of the relevant market. *See Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 376 (E.D.N.Y. 2002) (plaintiff may allege monopoly power by pleading power to control prices or exclude competition or possession of a "predominant" share of the relevant market). Lower shares are almost always found not to confer monopoly power. *See, e.g.*, *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 742 (2d Cir. 1989) (finding 31% market share insufficient); *United States v. Eastman Kodak Co.*, 853 F. Supp. 1454, 1471 (W.D.N.Y. 1994) (finding 36% market share insufficient), *aff'd*, 63 F.3d 95, 109 (2d Cir. 1995); *Giant Paper & Film Corp. v. Albemarle Paper Co.*, 430 F. Supp. 981, 986 (S.D.N.Y. 1977) (finding 14% market share insufficient). MDM does not allege that GSUSA has monopoly power in any market, and it could not plausibly do so. MDM's case appears to relate to the provision of photocopying equipment and services in an unspecified geographic area. If so, whatever the geographic area, it would be impossible for MDM to allege that GSUSA has either monopoly power (given that there is no claim that it is a provider of such services), or monopsony power (buyer's monopoly) (given that GSUSA is at most one of thousands of customers for such equipment and service and is far smaller than numerous large, for-profit corporations that also seek such equipment and service).

11

### c. MDM Has Alleged No Anticompetitive Conduct to Acquire or Maintain a Monopoly for GSUSA

The plaintiff in a monopolization case must allege that the defendant undertook anticompetitive conduct to acquire or maintain monopoly power in a relevant market. *See Grinnell*, 384 U.S. at 570-71. As explained above, choosing one supplier over another is not anticompetitive. But even if it were, the Complaint does not allege that awarding the contract to DPI rather than MDM *enabled GSUSA to acquire or maintain monopoly power in any market*. That alone is fatal to a monopolization claim. *See Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510, 1520 (7th Cir. 1992) (finding conduct did not violate Section 2 because the defendant's actions did not assist in acquiring additional monopoly power or maintaining existing power).

### 2. MDM Alleges No Attempted Monopolization under Section 2 of the Sherman Act

An additional cause of action exists under Section 2 of the Sherman Act for attempt to monopolize. A plaintiff lodging a claim for attempt to monopolize must plead and ultimately prove "(1) relevant market (including geographic market and relevant product market); (2) dangerous probability of success in monopolizing the relevant market; (3) specific intent to monopolize; and (4) conduct in furtherance of such an attempt." *TV Communs. Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992); *see also H.L. Hayden Co. v. Siemens Med. Sys, Inc.*, 879 F.2d 1005, 1017 (2d Cir. 1989). Again, MDM has not pled these elements, nor could it plead them under the facts of this case.

As discussed above, MDM nowhere defines any relevant product or geographic market (the first required element).

MDM also never alleges that any defendant had a dangerous probability of acquiring monopoly power in a relevant market. Such allegations would not only have to be made, but would also have to be supported with factual allegations providing a basis for the conclusion that

12

a defendant has a dangerous probability of acquiring monopoly power.  Generally, this entails

pleading that a defendant already possesses some measure of market power as evidenced, for

example, by a substantial market share in a relevant market.  "To allege a dangerous probability

of achieving monopoly power, plaintiff must plead that defendants possess a sufficient share of

the relevant market."  *Rome Ambulatory Surgical Ctr., LLC v. Rome Mem'l Hosp., Inc.*, 349 F.

Supp. 2d 389, 418 (N.D.N.Y. 2004), *citing AD/SAT v. AP,* 181 F.3d 216, 226 (2d Cir. 1999),

*Twin Labs., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 570 (2d Cir. 1990) *and Tops Mkts.,*

142 F.3d at 100.

MDM also never alleges the third required element of an attempted monopolization

claim, that any defendant had the specific intent to acquire monopoly power.  *See Spectrum*

*Sports v. McQuillan*, 506 U.S. 447, 456 (1993) (requiring specific intent to monopolize); *Times-*

*Picayune Publ'g Co. v. United States*, 345 U.S. 594, 626 (1953) (same).

Finally, for the fourth required element, MDM would have to allege that GSUSA

engaged in "predatory or anticompetitive" conduct in furtherance of its attempt to gain monopoly

power.  "Conduct that does not constitute 'willful acquisition or maintenance' of monopoly

power (thus precluding establishment of the offense of monopolization) cannot constitute the

'predatory or anticompetitive conduct' required to establish the offense of attempt to

monopolize."  *Transamerica Computer Co. v. IBM Corp.*, 698 F.2d 1377, 1382 (9th Cir. 1983).

As discussed above, MDM has not alleged any conduct by GSUSA that has reduced competition

or gained monopoly power for GSUSA in any relevant market.

### 3.    MDM Alleges No Conspiracy to Monopolize under Section 2 of the Sherman Act

A third and final cause of action that can be lodged under Section 2 of the Sherman Act is

that of a conspiracy to monopolize.  This offense requires (1) the existence of a combination or

conspiracy, (2) an overt act in furtherance of the conspiracy, and (3) specific intent to

monopolize. *See United States v. Yellow Cab Co.*, 332 U.S. 218, 225 (1947); *Volvo N. Am.*

*Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988). Here, MDM neither

alleges nor could provide factual allegations to support any of these three elements, but most

especially the third, as MDM does not and cannot allege that any defendant specifically intended

to acquire monopoly power in any relevant market.

## II.    THE DONNELLY ACT CLAIMS MUST BE DISMISSED

Like the federal antitrust laws, New York's Donnelly Act is not a catch-all statute

outlawing all discriminatory business behavior. *See Assocs. Capital Servs. Corp. of New Jersey*

*v. Fairway Private Cars, Inc.*, 590 F. Supp. 10 (E.D.N.Y. 1982) (holding that both the Donnelly

and Sherman Acts are designed to protect competition, and are not general prohibitions of all

types of activity which may result in economic harm to any individual business). "To state a

claim under the Donnelly Act, a party must: (1) identify the relevant product market, (2) describe

the nature and effects of the purported conspiracy, (3) allege how the economic impact of that

conspiracy is to restrain trade in the market in question, and (4) show a conspiracy or reciprocal

relationship between two or more entities." *Benjamin of Forest Hills Realty, Inc. v. Austin*

*Sheppard Realty, Inc.*, 823 N.Y.S.2d 79, 81-82 (N.Y. App. Div. 2d Dep't 2006), *citing Altman v.*

*Bayer Corp.,* 125 F. Supp. 2d 666 (S.D.N.Y. 2000); *Great Atl. & Pac. Tea Co. v. Town of East*

*Hampton,* 997 F. Supp. 340 (E.D.N.Y. 1998); *Newsday, Inc. v. Fantastic Mind,* 655 N.Y.S.2d

583 (N.Y. App. Div. 2d Dep't 1997); *Bello v. Cablevision Sys. Corp.,* 587 N.Y.S.2d 1 (N.Y.

App. Div. 2d Dep't 1992).[3]

---

[3] The standards for evaluating a plaintiff's pleading of these elements are generally the
same as those applied under Section 1 of the Sherman Act. "The Donnelly Act, N.Y. Gen. Bus.

*(Footnote continued)*

MDM's Complaint does not satisfy the first of these elements, failing completely to define any relevant market, a central element of an antitrust claim under New York's Donnelley Act. "Merely claiming or even proving a form of monopoly does not demonstrate violation of the statute without concomitant establishment of the relevant market factors. … The plaintiff must explain why the market it alleges is in fact the relevant, economically significant product market." *Benjamin of Forest Hills Realty*, 823 N.Y.S.2d at 82, *citing Re-Alco Indus. v. Nat'l Ctr. for Health Educ.,* 812 F. Supp. 387 (S.D.N.Y. 1993).

Necessarily, MDM then also fails to allege the third element, a restraint of trade, which must be alleged in the framework of an alleged relevant market. *See Benjamin of Forest Hills Realty*, 823 N.Y.S.2d at 82. In any event, the Complaint contains no allegation describing the nature of any restraint of trade or harm to competition, merely alleging competitive disadvantage as to itself. Such allegations cannot state a claim under the Donnelly Act. *See, e.g., Oceanus Beverages, Inc. v. Van Munching & Co.*, 168 N.Y.S.2d 204 (N.Y. App. Div. 2d Dep't 1957) (finding discontinuance of business relationships not actionable under the Donnelly Act absent injury to the public through a restraint on competition); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87 (2d Cir. 1983) (finding the refusal by a publisher to include a law firm in a legal directory was not actionable under the Donnelly Act because it did not have, and was not intended to have, any anticompetitive effect on publishing of legal directories).

---

Law § 340, was 'modeled on the Federal Sherman Act of 1890,' and therefore 'should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result.'" *Doron Precision Sys., Inc. v. FAAC, Inc.,* 423 F. Supp. 2d 173, 192 (S.D.N.Y. 2006), *quoting X.L.O. Concrete Corp. v. Rivergate Corp.,* 83 N.Y.2d 513, 518 (1994).

Finally, as discussed above, the Complaint fails to allege "a conspiracy or reciprocal relationship between two or more entities" other than by bald assertion, and contains no specifics of the nature and effects of any purported conspiracy. The text of the Donnelly Act and the weight of authority suggest that the Donnelly Act is limited to proscriptions on concerted action. *See Creative Trading Co., Inc. v. Larkin-Pluznick-Larkin, Inc.*, 523 N.Y.S.2d 102, 103 (N.Y. App. Div. 1st Dep't 1988) ("[T]he Donnelly Act mandates that there be a conspiracy or reciprocal relationship between two or more entities before liability can be found.") (internal citations omitted), *quoting State of New York v. Mobil Oil Corp.*, 381 N.Y.S.2d 426, 464 (1976). *See also Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 90 (2d Cir. 1983); *Berman v. Riverbay Corp.*, No. 89 Civ. 5538 (WK), 1990 WL 116765 (S.D.N.Y. March 29, 1990) at *2; *Int'l Television Prods. Ltd. v. Twentieth Century-Fox Television Div. of Twentieth Century Fox Film Corp.*, 622 F. Supp. 1532, 1540 n.10 (S.D.N.Y. 1985). This is fatal to MDM's claim.

## III. THE STATE LAW COUNTS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION WHEN THE FEDERAL ANTITRUST COUNTS ARE DISMISSED

After dismissing MDM's antitrust claims, this Court should dismiss Counts V and VI of the Complaint for lack of federal subject matter jurisdiction without the necessity of considering independent substantive grounds to dismiss them, although those are set forth below. Whether to retain jurisdiction over pendent state law claims is a matter for the Court's sound discretion, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), but:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

16

*Id.* (citations and footnotes omitted).  *See also Grace v. Rosenstock,* 228 F.3d 40, 55 (2d Cir.

2000) (dismissing pendent state claims where "all federal issues have now been disposed of, and

[newly raised state law] claims are substantially different from the federal claims that have been

adjudicated"); *Giant Group, Ltd. v. Sands*, 142 F. Supp. 2d 503, 513 (S.D.N.Y. 2001)

(dismissing pendent state law claims where "[s]ince the federal securities claim raised in the

complaint has been dismissed, there is no federal question basis for exercising jurisdiction").

Accordingly, GSUSA respectfully requests dismissal of Counts V and VI, respectively alleging

breach of the implied covenant of good faith and common-law fraud, upon dismissal of the

antitrust counts.  In the alternative, however, fatal substantive defects in Counts V and VI also

warrant their dismissal on the merits.

## IV.    COUNT V MUST BE DISMISSED BECAUSE MDM DOES NOT ALLEGE A CONTRACT CREATING ANY IMPLIED COVENANT OF GOOD FAITH

Count V alleges that GSUSA is liable to MDM for breaching the implied covenant of

good faith in connection with its RFP.  The implied covenant of good faith is a contract doctrine;

it is a principle by which parties are expected to abide when enforcing contract provisions.  New

York recognizes as implicit in every contract "a covenant of good faith and fair dealing in the

course of contract performance."  *Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 389 (1995).

This covenant incorporates "any promises which a reasonable person in the position of the

promise would be justified in understanding were included," *Rowe v. Great Atl. & Pac. Tea Co.,*

46 N.Y.2d 62, 69 (1978), including in particular a promise that "neither party shall do anything

which will have the effect of destroying or injuring the right of the other party to receive the

fruits of the contract."  *Dalton*, 87 N.Y.2d at 389.

Here, MDM does not allege any contract with GSUSA to which an implied covenant of

good faith attaches.  This is fatal to MDM's claim, because "a breach of the implied covenant is

17

not a separate cause of action, but is instead one way of establishing a breach of contract."
*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007);
*see also Metropolitan Life Ins. Co. v. RJR Nabisco, Inc*., 716 F. Supp. 1504, 1517 (S.D.N.Y.
1989) (ruling with respect to the implied covenant of good faith that "[where] plaintiffs'
contractual rights [have not been] violated, there can have been no breach of an implied
covenant") (internal quotation and citation omitted); *Caplan v. Unimax Holdings Corp.*, 591
N.Y.S.2d 28, 29 (N.Y. App. Div. 1st Dep't 1992). A plaintiff must therefore allege either that a
contract exists between the parties whose interpretation is constrained by the implied covenant of
good faith or that some statute explicitly imposing such a duty exists between the parties. *Id.*
Where, as here, the plaintiff fails to allege these elements, its case must be dismissed because
"there is no contract or statutory duty to which [plaintiff] can argue that its good faith claim …
applies." *Grain Traders v. Citibank, N.A.*, 960 F. Supp. 784, 792 (S.D.N.Y. 1997) (holding with
respect to the parallel UCC provision that "to the extent that Grain Traders is asserting that a
violation of § 1-203 gives rise to an independent cause of action, its assertion is without merit,
for § 1-203 does not give rise to an independent cause of action"); *ses also Super Glue Corp. v.
Avis Rent A Car Sys., Inc.,* 517 N.Y.S.2d 764, 766 (N.Y. App. Div. 2d Dep't 1987) ("the Code
does not permit recovery of money damages for not acting in good faith where no other basis of
recovery is present").

## V.    MDM'S FRAUD CLAIM MUST BE DISMISSED

### A.    <u>MDM Does Not Plead the Required Elements of Fraud</u>

In New York, the elements of common-law fraud are:  "1) the defendant's
misrepresentation or omission of a material fact, 2) the defendant's intent to deceive plaintiff, 3)
justifiable reliance upon the misrepresentation by the defrauded party, and 4) that the plaintiff's

injury was caused by the defendant's misrepresentation or omission." *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991), *citing Idrees v. American University of Caribbean,* 546 F. Supp. 1342, 1346 (S.D.N.Y. 1982) *and Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112 (1969).

With respect to the first element, to survive a motion to dismiss, a plaintiff claiming fraud must plead with specificity the misrepresentation or omission of material facts by the defendant. *See Morse*, 777 F. Supp. at 319 (dismissing fraud claim where plaintiff, in its complaint, did not link defendant to any misrepresentations or omissions). MDM here points only to conditions listed in GSUSA's RFP that were subsequently changed or dropped, allegedly without notice to MDM. Taking MDM's allegations as true, the requirements in GSUSA's RFP were true at the time they were made, and were not made with any intent to deceive MDM. *See* Complaint ¶¶ 33, 63-69 (alleging that the waiver of some specifications of the RFP and of the $40,000 cash payment requirement were made only "after DPI was awarded the bid" and not at the time the RFP was issued).

MDM's other allegations, such as that the generally understood meaning of an RFP is that it provides a level playing field where all bidders have an equal chance, and therefore that GSUSA implicitly made this representation when it issued an RFP, fall far short of the specific misrepresentation that must be pled in a fraud claim. MDM alleges no representation by GSUSA that GSUSA knew was false, or that in fact was false, at the time that it was made. At most, MDM alleges that GSUSA failed to keep MDM and other bidders apprised of changes in requirements under the RFP. Such general allegations of fraudulent conduct stretching over a period of time do not suffice to state a claim for fraud. As the Second Circuit has held with respect to similarly vague allegations:

> No legally-sufficient claim for fraud is stated in appellant's complaint.   In attempting to plead the claim, appellant merely alleges that appellees fraudulently conspired to hide the treasure, executed false and misleading documentation as to the true ownership of the real and personal property held by each of them, and conspired to fraudulently conceal the treasure in certain foreign and domestic bank accounts under fictitious names.   As the district court correctly observed, these allegations do not form the basis for any claim of fraud.   Such a claim requires a false misrepresentation of a material fact, by one who knows it to be false, for the purpose of inducing another to rely upon it, as well as actual reliance to his injury by the defrauded party in ignorance of the falsity.   *Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir. 1987).

*Golden Buddha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 202 (2d Cir. 1991).

The only type of fraud that can be alleged without identifying a specific representation is fraudulent concealment, a cause of action, which, in New York, substitutes, in place of the requirement of a specific affirmative misrepresentation, the elements of (1) a relationship between the contracting parties that creates a duty to disclose and (2) knowledge of, but failure to disclose, the material facts by the party bound to disclose.  *See Aetna Cas. & Sur. Co.*, 404 F.3d 566, 582 (2d Cir. 2005); *Congress Fin. Corp. v. John Morrell & Co.,* 790 F. Supp. 459, 472 (S.D.N.Y. 1992).  As to the first element, "[a] duty to disclose arises in one of three circumstances:  where the parties are in a fiduciary relationship; under the 'special facts doctrine,' where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge, or where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure."  *Aetna*, 404 F.3d at 582 (citations omitted).  MDM alleged none of these circumstances.

MDM and GSUSA were not in a fiduciary relationship, but were transacting at arm's length.  The Complaint contains no allegation that GSUSA uttered any "half-truth"—an affirmative representation that, without qualification or additional information, would create a

false impression.  The third possibility, that GSUSA had superior knowledge and intended that the other party act on mistaken knowledge, generally requires conduct by the defendant closely similar to a verbal half-truth.  For example, where sellers of securities actively promoted their investment value to buyers but were silent on the subject of whether they contained restrictions on transferability, it was held to be fraudulent to omit mention of a two-year transferability restriction to prospective purchasers.  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993); *Donovan v. Aeolian Co.,* 270 N.Y. 267, 272 (1936) (finding that where piano manufacturer placed rebuilt piano in showroom under circumstances suggesting that it was new, it was fraudulent not to disclose its rebuilt condition even though no affirmative representation as to new status was made).  Although GSUSA arguably had superior knowledge about its own contract requirements, there is no allegation that GSUSA acted so as to create any mistake as to those requirements on the part of MDM or intended that MDM act on the basis of such mistaken knowledge; instead, the Complaint alleges that MDM's bid took account of the possible changes in the contract requirements that eventually materialized, but that GSUSA simply was not interested in receiving any further bid from MDM in response to such changes.  *See* Complaint ¶¶ 73-78.

As to the second required element for either type of fraud claim, that of scienter or intent to defraud, MDM does not allege, as it must, that any misstatements or omissions by GSUSA were made with fraudulent intent, i.e., that GSUSA knew they were false when it made them and intended that MDM rely on them.  In pleading fraud, "conclusory assertions of intent are sufficient 'if supported by facts giving rise to a strong inference of fraudulent intent.'  This may be accomplished through allegations of a motive to deceive and access to accurate information." *Aetna* , 404 F.3d at 579.  Here, MDM has failed to meet even this standard.  Nowhere in the

Complaint does MDM allege what motivation GSUSA might have had for deceiving MDM, that is, what GSUSA might have stood to gain from MDM's misunderstandings as to the bidding process. On the contrary, the Complaint suggests that GSUSA *injured* itself by allegedly deceiving MDM about the RFP and denying MDM the opportunity to offer GSUSA a better bid than it received from DPI or others.

### B.    MDM Fails to Plead Fraud with the Requisite Particularity

Federal Rule of Civil Procedure 9(b) requires that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In the Second Circuit this means that "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989); *see also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (plaintiffs must specify the "time, place, speaker and content of the alleged misrepresentations"). Fraudulent concealment is subject to Rule 9(b)'s requirement that it be pled with specificity. *See Aetna*, 404 F.3d at 582.

Under Rule 9(b), a plaintiff may not survive a motion to dismiss by pleading fraudulent concealment by failing to disclose information over a period of time, as MDM seeks to do, but must specifically state the time, place, and circumstances at which the duty to disclose the information was created. *See Aetna*, 404 F.3d at 582-83 (dismissing fraudulent concealment claim where plaintiff, a contractor, alleged that it was given documents incompletely describing work to be performed under circumstances suggesting that they described the work completely, but failed to allege who prepared the documents, "the precise circumstances in which it received the Project Documents, and how those circumstances gave rise to a reasonable belief on plaintiff's part that they were comprehensive"). MDM never alleges that it was deceived by

information or circumstances contrived by GSUSA, but on the contrary repeatedly alleges that it knew GSUSA's RFP requirements to be biased in favor of DPI from the outset and also that it anticipated that certain requirements of the RFP would likely change. *See* Complaint ¶¶ 28-43, 51-62, 74-77. Thus, MDM failed to allege with particularity circumstances that would create any duty for GSUSA to disclose to MDM "the true economic terms and conditions of the RFP and … the changed and waived conditions of the bid."

Even if GSUSA were under a duty to disclose to MDM the information about its contract requirements to which MDM alleges it was entitled, MDM has not pled scienter, i.e., that GSUSA concealed this information with any intent to defraud MDM. As discussed above, MDM has advanced no motive for GSUSA to deceive MDM. Taking the allegations of the Complaint as true, GSUSA did not benefit at MDM's expense, but on the contrary, by allegedly not having the opportunity to consider a new offer from MDM, deprived itself of the best deal on copying equipment and services. Nor was it necessary to defraud MDM under the allegations of the Complaint. Taking those allegations as true, GSUSA, for reasons of its own, sought to favor DPI in the bidding for GSUSA's photocopying services contract so that DPI would get the business. Because GSUSA itself would determine who got the business, it had no need to deceive MDM to ensure that the contract went to DPI and nothing to gain by the fraud alleged.

## VI.    ALL CLAIMS MUST BE DISMISSED BECAUSE MDM ALLEGES NO INJURY CAUSED BY GSUSA'S ACTIONS

Under the antitrust and fraud theories pled in its Complaint, MDM must have sustained injury as the proximate result of the alleged conduct by GSUSA and DPI of which MDM complains. In cases brought under the antitrust laws, actions by the defendant that allegedly harm competition must be a "material" cause of injury to the plaintiff as a predicate to recovery. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1060 (8th Cir. 2000); *Greater*

*Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993) (same); *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000) (injury must be a "foreseeable and necessary" result of the conduct); *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 172 F. Supp. 2d 1060 (S.D. Ind. 2001) (conduct must be a "material element of and substantial" cause of the injury). In a case alleging fraud by nondisclosure, the plaintiff must show "injury resulting from justifiable reliance by the aggrieved party" on the defendant's "misrepresentation, concealment or nondisclosure of a material fact." *Allen v. Westpoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991). In pleading fraud, a plaintiff must allege that "the alleged misrepresentations or other misconduct were the direct and proximate cause of the losses claimed." *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (N.Y. App. Div. 1st Dep't 2002) (dismissing fraud claim for lack of causal nexus between alleged misrepresentations and alleged injury); *see also Wall Street Transcript Corp. v. Ziff Communs. Co.,* 638 N.Y.S.2d 640. [4]

MDM's prayer for relief is for the value of the contract that it lost. MDM alleges that if GSUSA had provided MDM with the information MDM claims was withheld from it, then MDM would have reduced the amount of its bid by $4,000 and GSUSA would have awarded it the contract. But there is no basis to suppose that GSUSA would have awarded MDM the contract in response to the new bid. Indeed, the gravamen of MDM's whole complaint is that GSUSA stacked the deck against MDM (and all bidders other than DPI) from the outset. Taking MDM's allegations as true, it appears clear that GSUSA had no intention of ever awarding MDM the contract, and MDM can have no expectation that it would have done so.

---

[4] Under MDM's theory of breach of the implied covenant of fair dealing, there is no causation standard because, as discussed above, the implied covenant is a contract doctrine that cannot be used as the basis of an independent cause of action.

In addition, MDM repeatedly alleges that the actions committed by GSUSA were committed not only against itself, but also against "other bidders," any of which might have won the contract instead of MDM if it was not disadvantaged by GSUSA's alleged actions. *See* Complaint ¶¶ 19-22, 25, 26, 40-48, 63, 65-66, 69, 80-81, 83-85, 94, 98, 102 (alleging, e.g., that the actions taken by GSUSA "had the purpose and/or effect of rendering all bidders aside from DPI non-competitive" (¶ 25)). Therefore, the most MDM could expect from the "fair" treatment it believes it should have gotten would be that it could compete on more favorable terms with the other bidders, including Xerox, Canon, and Mita, as well as DPI. It is not a "foreseeable and necessary" result of GSUSA's alleged conduct that MDM did not vanquish all of these opponents, and thus MDM fails to allege a proximate causal connection between GSUSA's conduct and MDM's failure to secure the contract with GSUSA.

Apart from all of the other insufficiencies in MDM's pleading, its failure to allege any injury resulting from GSUSA's conduct independently is fatal to its antitrust and fraud claims.

### Conclusion

For the reasons set forth above, the Court should dismiss this action in its entirety for failure to state a claim.

Dated: New York, New York
    October 22, 2007

HELLER EHRMAN LLP
By:_____/S/_____
    August T. Horvath (AH-8776)
Joseph Angland (JA-6607)
Kenneth Kirschner (KK-0252)
7 Times Square
New York, New York 10036
Tel.: (212) 832-8300
Fax: (212) 763-7600

Attorneys for Defendant Girl Scouts of the United States of America

25