Bruce I. Afran (BA 8583)
10 Braeburn Drive
Princeton, New Jersey 08540
609-924-2075

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
MDM BUSINESS TECHNOLOGIES GROUP, INC.,

        Plaintiff,

        v.

GIRL SCOUTS OF THE UNITED STATES OF
AMERICA, INC.; and DIGITAL PRODUCTS, INC.,     No: 07 cv 07477 (WHP)

        Defendants.
----------------------------------------------------------------


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT GIRL SCOUTS OF THE UNITED STATES OF AMERICA'S
MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................6

PRELIMINARY STATEMENT.............................................................6

ARGUMENT........................................................................................7

POINT I...............................................................................................7

THE COMPLAINT ADEQUATELY GIVES NOTICE OF THE
THE ANTITRUST CLAIMS.

A.  The Complaint adequately gives notice of the anti-competitive course of
conduct. ..........................................................................................7

B. The Complaint adequately specifies the relevant provision of the Sherman
Act. ...................................................................................................7

C.  MDM's Complaint adequately pleads a conspiracy between Girl Scouts and
DPI under the notice pleading rule of *Bell Atlantic Corp. v. Twombley*, 127 S. Ct.
1955 (2007)........................................................................................9

D.  *Discon v. Nynex Corp.* is inapposite to the instant case and provides no basis
for dismissal......................................................................................11

E.  A finding of "unreasonable restraint of trade", whether as a per se violation or
a violation under the 'rule of reason' is highly fact specific requiring factual
inquiry by the Court. .......................................................................12


POINT II.............................................................................................18

THE STATE LAW CLAIMS ARE PROPERLY SET FORTH AND
THE MOTION TO DISMISS SHOULD BE DENIED.

A.  Plaintiff agrees that if the Court should determine to dismiss the pending
federal claims, the pendant state law claims should be dismissed without
prejudice. ........................................................................................18

B.   The Cause of Action for Fraud is Properly Pled....................................19

C.  The Complaint sets forth a claim for breach of the obligation of good faith and
    fair dealing underlying the bid requests…………………………………………..21

CONCLUSION………………………………………………………………………23

## TABLE OF AUTHORITIES

*Arizona v. Maricopa County Medical Society*, 457 U.S. 332 (1982)

*Atlantic Cleaners & Dyers, Inc. v. United States,*
286 U.S. 427, 435, 76 L. Ed. 1204, 52 S. Ct. 607 (1932)

*Barrett v. United States Banknote Corp.*, 1992 U.S. Dist. LEXIS 13178
(S.D.N.Y. Sept. 2, 1992)

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)

*Brass v. American Film Tech., Inc.,* 987 F.2d 142 (2d Cir. 1993)

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1 (1979)

*Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272 (7th Cir. 1983)

*Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717;
108 S. Ct. 1515; 99 L. Ed. 2d 808; 1988 U.S. LEXIS 2033 (1988)

*Butts v. New York City Department of Housing Preservation and Development*,
2007 U.S. Dist. LEXIS 6534 (S.D.N.Y. 2007)

*Castellano v. Board of Trustees of the Police Officers Variable Supplements Fund*,
937 F.2d 752; 1991 U.S. App. LEXIS 13548 (2d Cir. 1991)

*Chanayil v. Gulati,* 169 F.3d 168 (2d Cir. 1999)

*Chicago Bd. of Trade v. United States*, 246 U.S. 231 (1918)

*Continental TV, Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36,
97 S. Ct. 2549; 53 L. Ed. 2d 568; 1977 U.S. LEXIS 134 (1977)

*Continental T. V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36 (1977)

*Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991)

*County of Orange v. Sullivan Highway products and North Dakota Cement*,
1989 U.S. Dist. LEXIS 12128 (S.D.N.Y. 1989)

*Discon, Inc. v. Nynex Corp, 525 U.S. 128 (1998)*

*Flemington National Bank & Trust Company (N. A.) v.*
*Domler Leasing Corporation*, 65 A.D.2d 29 (1st Dept. 1978)

*Gerzof v. Sweeney*, 16 N. Y. 2d 206 (1965)

4

*International Distribution Centers, Inc. v. Walsh Trucking Co.*,
812 F.2d 786 (2d Cir. 1987)

*James Cape & Sons company v. PCC Construction Company*,
453 F.3d 396 (7th Cir. 2006)

*MacPherson v. Kessef Tov Corp.* 116 A.D.2d 522 (1st Dept. 1986).

*Matter of McNutt Co. v. Eckert*, 257 N. Y. 100 (1931)

*Matter of Resco Equip. & Supply Corp. v. City Council of City of Watertown*,
34 A D 2d 1088 (4th Dept. 1970).

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993);

*National Collegiate Athletic Assn. v. Board of Regents of University of Oklahoma*,
468 U.S. 85 (1984)

*National Society of Professional Engineers v. United States*, 435 U.S. 679 (1978)

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
472 U.S. 284 (1985)

*Philip Morris, Inc. v. Heinrich*, 1997 U.S. Dist. LEXIS 20199,
1998-1 Trade Cas. (CCH) P72,061 (S.D.N.Y. 1997)

*Reiss v. Financial Performance Corporation,* 279 A.D.2d 13;
715 N.Y.S.2d 29 (1st Dept. 2000).

*Siders v. Odak*, 126 A.D.2d 292 (3d Dept. 1987)

*Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 114 L. Ed. 2d 366, 111 S. Ct. 1842 (1991)

*United States v. Romer*, 148 F.3d 359 (4th Cir. 1998)

*White Motor Co. v. United States*, 372 U.S. 253; 83 S. Ct. 696;
9 L. Ed. 2d 738; 1963 U.S. LEXIS 2578 (1963)

## INTRODUCTION

This Memorandum is respectfully filed in opposition to defendant Girl Scouts of the United States (Girl Scouts) motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## PRELIMINARY STATEMENT

The factual background is fully set forth in the complaint which defendant concedes must be accepted as true at this stage.

The bid solicitation by Girl Scouts gives rise to an implied understanding that the bid process is to be implemented in good faith under New York law and public policy. A bid operated from any other principle defeats the very purpose and commercial function of a neutral bid solicitation.

Girl Scouts' solicitation for copy machines was designed and constructed to limit a competitive bid process as follows: 1) the bid was designed to limit machine configurations to those that only *one* favored bidder could supply at a competitive rate; 2) Girl Scouts' refused to modify the bid to permit functional equivalents that *other* bidders could supply in a reasonably commercial fashion; 3) Girl Scouts' bid requirements of equipment bundling had no commercial justification and was intentionally imposed on the bid to ascertain that *only* the favored bidder could supply the bid at a discount from the market.

Having invited bidders to bid in a seemingly neutral bid process, Girl Scouts restrained trade by manipulating the bid to direct the award to a pre-determined bidder, violated the implied obligation of good faith in contracts by designing the bid so as to prevent success by all but the favored bidder, induced participation by the bidders by fraudulent concealment of the intent and purpose of the bid and by concealment of the intent to alter the bid requirements post-bid submission. Such bid was designed and intended to favor a single pre-determined bidder –co-defendant Digital Products, Inc. (DPI). Such arrangement restrains trade in that it effectively prohibits other bidding parties such as MDM from succeeding on the bid, not because of their competitive failings, but because of bid requirements designed and constructed to permit one pre-determined party to be the low bidder. As Girl Scouts could learn of DPI's supply advantages only from direct communication with DPI, the Complaint alleges that Girl

Scouts and DPI conspired and acted in concert to rig the bid.  Such assertions more than amply satisfy notice pleading rules as to an action under the Sherman or Clayton Acts and under the state law claims.

## ARGUMENT
### POINT I
**THE COMPLAINT ADEQUATELY GIVES NOTICE OF THE THE ANTITRUST CLAIMS.**

**A. The Complaint adequately gives notice of the anti-competitive course of conduct.**

Defendant Girl Scouts claims that the complaint is deficient because it alleges that defendants engaged in anti-competitive practices "with no further specification of the type of antitrust violation alleged".  Defendant's Brief at 4.

To support this argument, Girl Scouts refers to the general demands for relief set forth at the end of each cause of action at paras. 87, 90, 94 and 98.  Defendant's Brief at 4.  Relying on what it calls these "catch all" paragraphs, without reference to any other section of the complaint, the defendant contends MDM has sought relief "without further elaboration" of the anti-competitive course of conduct.   Brief at 4.

This argument conveniently ignores all of the preceding paragraphs in the first cause of action, paras. 80-86 which summarize the anticompetitive course of dealing in detail that alone would satisfy notice pleading standards even without the four dozen preceding paragraphs that explain in substantive detail the nature and scope of the discriminatory bid conditions.

Plainly, plaintiff has set forth the nature and type of anti-competitive conduct alleged under Section 1 of the Sherman Act.

**B.  The Complaint adequately specifies the relevant provision of the Sherman Act.**

Defendant next contends that the complaint "does not identify which substantive antitrust provision was allegedly violated."  Defendant's Brief at 5.

This argument also derives from a crabbed and parsed reading of the Complaint.

Section 1 of the Act expressly authorizes a cause of action based upon a "contract, combination...or conspiracy *in restraint of trade*". 15 U.S.C. 1 [emphasis added]. The complaint relies expressly and directly upon this provision as the basis for the cause of action against Girl Scouts. See Complaint at para 87.

Paragraph 87 states:

Based on the foregoing, the Girl Scouts' design, use and implementation of the RFP and the award of the bid to DPI as described in this complaint, comprise anti-competitive practices *in restraint of trade or commerce causing injury and damage to MDM in violation of the Sherman Act, 15 U.S.C. 1*, et seq., and the Clayton Act, 15 U.S.C. 15, et seq.

Complaint, para. 87 [emphasis added].

Paragraphs 93, 94 and 95 of the Complaint similarly state that Girl Scouts "conspired" with DPI to engage in "anti-competitive practices in restraint of trade or commerce":

93, *DPI conspired, colluded and/or acted in concert with Girl Scouts in said practices and acts.*

94. ...*the Girl Scouts colluded with and conspired with DPI... to engage in anti-competitive practices in restraint of trade or commerce, causing injury and damage to MDM in violation of the Sherman Act, 15 U.S.C. 1, et seq., and the Clayton Act, 15 U.S.C. 15, et seq.*

95. Wherefore Girl Scouts and DPI are liable jointly and severally for damages to MDM pursuant to the Sherman and Clayton Acts, 15 U.S.C. 1, et seq., and the Clayton Act, 15 U.S.C. 15, et seq., for monetary damages in the minimum amount of One Hundred and Eighty-Nine Thousand, Three Hundred and Forty-three Dollars and Twenty Cents ($189,343.20), along with interest, cost of suit, attorneys fees and treble damages.

Complaint, paras. 93-95 [emphasis added].

As this language shows, the complaint expressly identifies the cause of action as arising under the Sherman Act's prohibition of a "conspiracy" "in restraint of trade or commerce", the operative text from the Section 1 of the Sherman Act. Thus, there is no basis to Girl Scouts' argument that "MDM's complaint...does not identify which substantive antitrust provision was allegedly violated." Defendant's Brief at 5.

To the contrary, the complaint expressly identifies and relies upon the relevant statutory language of Section 1, which Girl Scouts itself notes is the "only" provision that has "relevance to this case". Since the Complaint expressly pleads and relies upon this language from Section 1, it is self-evident that MDM has identified the relevant statutory provision.

No authority is given to support Girl Scouts' argument that such pleading is insufficient for notice purposes.

Consequently, plaintiff has appropriately set out the relevant provision of the Sherman Act.

### C. MDM's Complaint adequately pleads a conspiracy between Girl Scouts and DPI under the notice pleading rule of *Bell Atlantic Corp. v. Twombley*, 127 S. Ct. 1955 (2007).

In the course of resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court must read the complaint generously accepting the truth of and drawing all reasonable inferences from the well-pleaded factual allegations. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993); *Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The Court will accept the truth of and draw all reasonable inferences from the well-pleaded factual allegations contained in the complaint. *Philip Morris, Inc. v. Heinrich*, 1997 U.S. Dist. LEXIS 20199, 16; 1998-1 Trade Cas. (CCH) P72,061 (S.D.N.Y. 1997) (corporation stated a claim against its former purchasing manager and outside vendors in scheme to direct corporation's purchases to selected bidders).

> When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in . . . [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff[] had knowledge and relied on in bringing suit.

*Brass*, 987 F.2d at 150 (*citing Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)).

MDM's complaint comports with the notice pleading rule stated recently by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

In *Twombly*, the Supreme Court held that a complaint will present a prima facie claim of conspiracy under the Sherman Act where it is based on "*some* factual context suggesting agreement…" *Twombly*, 127 S. Ct. at 1961 [emphasis added].

Unlike *Twombly*, where there was no evidence of joint action but only that the defendants acted in parallel but independent actions, the complaint here alleges a "factual context, *Twombly, supra*, to support the allegation of conspiracy.

MDM alleges that Girl Scouts and DPI conspired to rig a bidding process to intentionally favor DPI by designing the bid to require equipment configurations and equipment bundling that *only* DPI could supply at an insider price as a result of its cross-ownership by ASAP, a bindery equipment manufacturer. Complaint at paras. 46-47. Thus, unlike *Twombly*, where the plaintiff could allege only parallel, *independent* actions by the defendants, the complaint here asserts a "factual context", *Twombly, supra*, in which the conspirators knowingly structured the bid to take advantage of DPI's cross ownership by an equipment maker who could enable DPI to supply the bid at a discount from the market, an advantage not available to any other bidder. Since DPI is a privately held company and, at the time of the bid, a recent start-up, it is evident that the design of the bid to favor DPI's unique ability to obtain such equipment at a discount from the market, could only be the result of direct communications between the defendants. Here then is the "factual context" of a conspiracy, as opposed to "parallel independent actions, that the Supreme Court found did not support standing in *Twombly*. It is inconceivable that Girl Scouts through independent action could design a bid to so carefully parallel a privately held, new start-up's unique access to discounted equipment.

*Twombly* does not require that the complaint *prove* such a conspiracy but only that the factual context be sufficient to create a well-founded "suggestion" that the defendants conspired as opposed to acting independently:

> "…we hold that stating such a claim [under the Sherman Act] requires a complaint with enough factual matter (taken as true) to *suggest* that an agreement was made."

127 S. Ct. at 1965 [emphasis added].

Nor does *Twombly* require a "probability" that a conspiracy took place but only that the complaint raises

"enough fact to raise a *reasonable expectation* that discovery will reveal evidence of illegal agreement.

127 S. Ct. at 1965 [emphasis added].

Logically, since no other bidders had such opportunity since they were not cross-owned by a bindery equipment maker, it follows that the complaint alleges a "factual context" that gives rise to a "reasonable expectation" that "discovery will reveal evidence of illegal agreement." *Twombly, supra.* Since the bid was carefully tailored to allow only DPI to succeed as low bidder, an inference of illegal agreement inevitably arises even if the court thinks that "actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Id.* Moreover, the Complaint's extensive detail of the intentional design of the bid to favor DPI, without commercial need or justification, the refusal of Girl Scouts to accept reasonable functional equivalents that could be supplied by other bidders, the fact that Girl Scouts later dropped the $40,000 buyout condition after awarding the bid to DPI, that MDM would have been the low bidder had it known that the $40,000 buyout condition would be waived, is hardly the offering of mere "labels and conclusions" or making a "formulaic recitation of a cause of action's elements". *Cf, Twombly* at 1964-65.

Simply put, it is nearly inconceivable that Girl Scouts, which had no prior relation with DPI, itself a start-up company, could "unilaterally", Defendant's Brief at 7, create a bid solicitation with bid conditions carefully tailored to the needs of a single, previously unknown bidder to the exclusion of all other bidding parties. Having never previously done business with DPI, a recent start-up and a privately held company whose commercial "strengths" were not in the public domain, Girl Scouts could not reasonably have created such bid conditions without private agreement or conspiracy with DPI.

Contrary to defendant's assertions, such allegations provide a "factual context" that raises a "reasonable expectation" under *Twombly* of conspiracy and illegal agreement.

**D. *Discon v. Nynex Corp.* is inapposite to the instant case and provides no basis for dismissal.**

Unlike the defendant's decision in *Discon, Inc. v. Nynex Corp*, 525 U.S. 128 (1998), to unilaterally do business with a favored customer, Girl Scouts here induced bidders to enter a seemingly neutral process that was pre-constructed to result in the bid award to a pre-determined supplier, DPI. In contrast, the defendant in *Discon* merely chose to do business with one supplier over another but did not, as Girl Scouts did here, induce bidders to enter what was promoted as a neutral and level bidding field.

Defendant's reliance on *Discon* is thus misplaced. In *Discon*, the court weighed the pro-competitive benefits of Nynex' business judgment against its anti-competitive effects and found that the business decision to favor the other supplier *enhanced* competition. In contrast, a fair reading of the instant complaint makes it clear that Girl Scouts' purpose in the conspiracy was to *eliminate* competition by designing the bid to result in a low bid by the pre-determined favored bidder, DPI. Such conduct is a far cry from Nynex' actions in *Discon* where the defendant did nothing to interfere with a competitive bidding process but merely made a business judgment to do business with plaintiff's competitor.

### E. A finding of "unreasonable restraint of trade", whether as a per se violation or a violation under the 'rule of reason" is highly fact specific requiring factual inquiry by the Court.

Whether a particular concerted action, i.e., the alleged conspiracy between Girl Scouts and DPI, violates section 1 of the Sherman Act, requires a case-by-case analysis. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 723; 108 S. Ct. 1515; 99 L. Ed. 2d 808; 1988 U.S. LEXIS 2033 (1988). In applying the so-called "rule of reason",

> "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition."

*Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977). "Rule of reason" analysis is not limited to a "static" range of conspiracies but is intended to have a "dynamic" flexibility" embracing a wide variety of illegal arrangements. *Business Electronics, supra.* at 732. As the Supreme Court in *Business Electronics* observed

> The term "restraint of trade" in the statute, like the term at common law, refers not
> to a particular list of agreements, but to a particular economic consequence, which
> may be produced by quite *different sorts of agreements in varying times and
> circumstances.*

485 U.S. at 731 [emphasis added]. [1]

It is because of this inherent flexibility in the definition of "restraint of trade"
under the Sherman Act that "the fact-finding weighs all of the circumstances of a case in
deciding whether a restrictive practice should be prohibited as imposing an unreasonable
restraint on competition." *Continental TV, Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49;
97 S. Ct. 2549; 53 L. Ed. 2d 568; 1977 U.S. LEXIS 134 (1977). "As its name suggests,
the rule of reason requires the factfinder to decide whether under all the circumstances of
the case the restrictive practice imposes an unreasonable restraint on competition."
*Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 343 (1982). As the Supreme
Court long ago observed,

> "The true test of legality [of the anticompetitive conduct] is whether the restraint
> imposed...promotes competition or whether it is such as may suppress or even
> destroy competition. To determine that question the court must ordinarily
> consider the facts peculiar to the business to which the restraint is applied; its
> condition before and after the restraint was imposed; the nature of the restraint
> and its effect, actual or probable. The history of the restraint, the evil believed to
> exist, the reason for adopting the particular remedy, the purpose or end sought to
> be attained, are all relevant facts."

*Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918).

---

[1] Moreover, it has been recognized that Congress intended the Sherman Act to reach the
constitutional limits of the commerce power. *United States v. Romer*, 148 F.3d 359, 365
(4th Cir. 1998), *citing Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 329 n.10, 114 L. Ed.
2d 366, 111 S. Ct. 1842 (1991) ("Congress 'meant to deal comprehensively and
effectively with the evils resulting from contracts, combinations and conspiracies in
restraint of trade, and to that end to exercise all the power it possessed.'") (*quoting
Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 435, 76 L. Ed. 1204, 52
S. Ct. 607 (1932)). Surely, this wide scope embraces the emergence of new forms of
restraints, such as the agreement at issue here where the bid solicitor conspires to award
the bid to a single, favored bidder.

[O]rdinarily", *Chicago Bd. of Trade,* 246 U.S. at 238, the court must make a factual inquiry before dismissing an action under the rule of reason and dismissal is premature where the requisites of *Twombly* are otherwise satisfied. Dismissal is proper only "if a plaintiff fails to allege any anticompetitive impact. *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1285 (7th Cir. 1983)(dismissing complaint where "plaintiff [had] not alleged any anticompetitive effect arising from the defendants' conduct," and the court could not "infer such an effect from the facts alleged"). As MDM's Complaint more than amply sets forth a "factual context" in which a "reasonable expectation" of anti-competitive effects can be inferred, *Twombly* at 1961, 1965, dismissal at the threshold is inappropriate. Indeed, the very nature of the conspiracy alleged by MDM, that Girl Scouts and DPI sought to direct the award of a bid to a pre-determined bidder, had as its purpose the intent and effect of *eliminating* competition among the bidders, a plainly anti-competitive effect. Hence, it cannot be said that the complaint fails to allege or create an inference of "*any* anticompetitive effect arising from the defendants' conduct." *Bunker Ramo Corp, supra.* [emphasis added].

Even a determination as to whether the alleged restraint follows the per se rule as opposed to the rule of reason will require a factual inquiry since the court must evaluate whether the conduct itself is inherently without competitive value. See e.g. *White Motor Co. v. United States*, 372 U.S. 253, 263; 83 S. Ct. 696; 9 L. Ed. 2d 738; 1963 U.S. LEXIS 2578 (1963) (concluding that a trial is necessary to determine whether a vertical territorial limitation is a per se violation of section 1).

Bid rigging cases are generally considered to be per se violations, *Philip Morris, Inc. v. Heinrich*, 1997 U.S. Dist. LEXIS 20199, 26-27, for which market concentration analysis is rendered unnecessary. *National Collegiate Athletic Assn. v. Board of Regents of University of Oklahoma,* 468 U.S. 85, 100 (1984). While the rule of reason requires a demonstration of anticompetitive effects or actual harm to competition in order to establish an antitrust violation, "when a per se offense is alleged, a showing of anticompetitive effect is not required to establish a Sherman Antitrust Act violation." *Philip Morris* at 22, *quoting Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 [*23]  F.2d 1272, 1283-84 (7th Cir. 1983); see also *Barrett v. United States Banknote Corp.*, 1992 U.S. Dist. LEXIS 13178, No. 7420, 1992 WL 232055, at *4 (S.D.N.Y. Sept.

14

2, 1992) ("The plaintiff who successfully alleges a per se violation relieves himself of the requirement of showing anticompetitive effect."). Thus, MDM need not demonstrate that the Girl Scouts/DPI conspiracy has an effect on the market as bid rigging is a per se violation of the antitrust laws.

While traditional bid-rigging analysis has hitherto concerned bids rigged by agreement among competing bidders, see e.g. *County of Orange v. Sullivan Highway products and North Dakota Cement*, 1989 U.S. Dist. LEXIS 12128 (S.D.N.Y. 1989), the unique circumstances of this case in which the bid was rigged by agreement between the bid solicitor (Girl Scouts) and one of the parties to the bid (DPI), requires factual analysis as to its anti-competitive or pro-competitive effect thereby precluding dismissal at the threshold. See *White Motor Co., supra*. As the Sherman Act embraces "quite different sorts of agreements in varying times and circumstances," *Business Electronics, supra.* at 731, the court is required to make such inquiry precisely because of the unique circumstances of bid rigging presented here even though not previously the subject of Sherman Act jurisprudence.

Thus, proof of market concentration and effect, while traditional in most rule of reason cases, may well be unnecessary here if the anti-competitive effect of rigging a bid to exclude all but the favored bidder is found to be so destructive of competition as to be a per se violation of section 1. Unlike some bid rigging cases that escape the reach of the Sherman Act as they paradoxically *increase* competition though in an illegal manner, *cf., James Cape & Sons company v. PCC Construction Company*, 453 F.3d 396, 399 (7th Cir. 2006), the conspiracy here absolutely and inescapably eliminated competition by assuring that only DPI could win the bid, despite holding out the bidding process as a seemingly neutral and level playing field. The test for a per se violation that requires no proof of market concentration is whether the anti-competitive practice has "such a 'pernicious effect on competition' that it 'lack[s]... any redeeming virtue' ". *White Motor Co., supra* at 50, *quoting Northern Pac. R. Co. v. United States, supra*, 356 U.S. 1, 5; 78 S. Ct. 514; 2 L. Ed. 2d 545; 1958 U.S. LEXIS 1777 (1958).

As the Court recognized in *Business Electronics Corp.*, 485 U.S. at 733, claims of per se violations may well require a case by case analysis:

"It would make no sense to create out of the single term "restraint of trade" a chronologically schizoid statute, in which a "rule of reason" evolves with new circumstances and new wisdom, but a line of per se illegality remains forever fixed where it was."

485 U.S. at 733.

As the court understood in *Business Electronics*, new forms of conspiracy must be evaluated factually to determine their anti-competitive effect.

Indeed, the nature of the conspiracy alleged by MDM, while novel in the annals of Sherman Act jurisprudence, may well satisfy the per se test. Per se rules are appropriate for "conduct that is manifestly anticompetitive." *Continental TV, supra*, at 50. Such conduct is defined as conduct "'that would always or almost always tend to restrict competition and decrease output.'" *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* 472 U.S. 284, 289-290 (1985), *quoting Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 19-20 (1979).

As the purpose of the conspiracy between Girl Scouts and DPI was to intentionally award the bid to a single pre-determined bidding party, DPI, it follows that the defendants' conduct would absolutely hinder competition since it was intended to eliminate entirely the competitive effect of the bidding process. In other words, since the only possible purpose of the rigged bid was to direct the bid to the pre-determined bidder to the intended exclusion of all others, such a scheme will "always… tend to restrict competition. *Northwest Wholesale Stationers, Inc., supra; see also Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 19-20 (1979). As the Second Circuit has recognized, "A particular restraint on trade is unreasonable if its anticompetitive effects outweigh its pro-competitive effects." *International Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d Cir. 1987), cert. denied, 482 U.S. 915, 107 S. Ct. 3188, 96 L. Ed. 2d 676 (1987).

Thus, this novel form of bid rigging, like its more conventional analogues, *see County of Orange v. Sullivan Highway products and North Dakota Cement*, 1989 U.S. Dist. LEXIS 12128 (S.D.N.Y. 1989), would appear to satisfy the per se test.

To the extent the court is uncertain as to such anti-competitive effect, particularly since the question of bid rigging by a conspiracy between the bid solicitor (Girl Scouts)

and a bidding party (DPI) has never been the subject of judicial consideration under the Sherman Act, the question of whether such a conspiracy has a per se anticompetitive effect must be made the subject of a preliminary factual inquiry to determine whether it has a sufficiently "pernicious effect" on competition, *White Motor, supra*, as to be a per se violation.

While this is a novel question for the federal court in the context of private bids under the Sherman Act, New York public policy has long recognized the anticompetitive nature of bids that are manipulated by the bid solicitor to favor a single bidder. *See e.g. Matter of Resco Equip. & Supply Corp. v. City Council of City of Watertown*, 34 A D 2d 1088 (4th Dept. 1970). In *Resco*, a losing bidder was found to have a triable cause of action where the municipality was accused of manipulating a bid by designing the bid specifications to favor the winning bidder. Though *Resco* concerned the municipality's duty under New York's Municipalities Law, it is virtually identical on its facts to MDM's claims against Girl Scouts and DPI. Where municipalities have "fixed or manipulated the specifications as to shut out competitive bidding or permit unfair advantage or favoritism", such anticompetitive conduct has been declared to be contrary to public policy. *See Gerzof v. Sweeney*, 16 N Y 2d 206, 209 (1965); *Matter of McNutt Co. v. Eckert,* 257 N. Y. 100, 104 (1931).

As this is obviously a threshold factual question that can be determined only by a fact finding as to the nature and degree of the anti-competitive effect of Girl Scouts' rigged bid, dismissal at the outset is inappropriate.

Indeed, the pro-competitive benefits of such a rigged scheme would seem to be overwhelmingly outweighed by the anti-competitive effect of luring bidders to a rigged bidding process designed to eliminate competition by directing the bid to the pre-determined bidder. While only "unreasonable restraints of trade" are prohibited by the Sherman Act, see e.g., *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 342-343 (1982); *National Society of Professional Engineers v. United States*, 435 U.S. 679, 687-688 (1978); *Chicago Board of Trade v. United States,* 246 U.S. 231, 238 (1918), it self-evidently and inherently "unreasonable" for a bid solicitor to establish a seemingly neutral bidding process that is designed to award the bid to the pre-determined bidder to

the pre-determined exclusion of the other good faith bidders. No pro-competitive values would appear in such process.

### Point II

### THE STATE LAW CLAIMS ARE PROPERLY SET FORTH AND THE MOTION TO DISMISS SHOULD BE DENIED.

**A. Plaintiff agrees that if the Court should determine to dismiss the pending federal claims, the pendant state law claims should be dismissed without prejudice.**

In its Brief, Girl Scouts asserts correctly that the Court should ordinarily restrain from deciding state law issues if it has dismissed the federal claims.

Reasons of comity and the avoidance of determining uncertain or perhaps novel applications of state law issues ordinarily require the exercise of the federal court's discretion to abstain and dismiss the state law claims without prejudice. *Castellano v. Board of Trustees of the Police Officers Variable Supplements Fund*, 937 F.2d 752, 758; 1991 U.S. App. LEXIS 13548 (2d Cir. 1991) (declining supplemental jurisdiction for reasons of comity and because issue appeared to be one of first impression under state law); *cf., Butts v. New York City Department of Housing Preservation and Development*, 2007 U.S. Dist. LEXIS 6534, 25 n. 11 (S.D.N.Y. 2007) (Court asserted supplemental jurisdiction only because discovery had been completed and little purpose would be served to forcing reconsideration of state issues in New York court).

MDM agrees that the pendant state law claims should be decided by the New York courts if this Court should dismiss the federal claims, particularly in light of the unique factual circumstances of this action that does not lend itself to ready application of state law issues. For example, the very nature of the bid rigging at issue – a conspiracy between the party soliciting the bid and *one* of the bidding parties – has not yet been made the subject of adjudication under New York common law and it would be an abuse of discretion for this Court to decide what appears to be an issue of first impression in the absence of federal jurisdiction. *Castellano, supra*. Although the New York courts have decided such issues under state laws governing public bidding, see e.g., *Matter of Resco Equip. & Supply Corp. v. City Council of City of Watertown*, 34 A D 2d 1088 (4th Dept.

18

1970), the issue of manipulation of private bids to favor a pre-determined bidder does not appear to have been made the subject of any New York decision and plaintiff concedes that it would be an abuse of discretion for this Court to decide such issue in the absence of federal jurisdiction.

Even under the Donnelly Act, cases of this nature have not been adjudicated and, as the New York Court of Appeals has recognized that the Donnelly Act has broader scope than the Sherman Act, the New York courts may well find a ground for relief in this area of first impression even where the federal court find no scope for action under the Sherman Act.  Indeed, as New York municipal law has long found these types of bid rigging arrangements to be anticompetitive in public bids, *Matter of Resco, supra.,* it is highly likely the Donnnelly Act may be deemed to apply to this private transaction even if, arguendo, the Sherman Act does not.  While MDM strongly argues that the Sherman Act will apply to a rigged bid of this nature, nevertheless, should this Court find no ground for relief under the Sherman Act. It should abstain and dismiss the Donnelly Act claim as it would be improper for the federal court to decide a question of first impression under state statutory law.

### B.  The Cause of Action for Fraud is Properly Pled.

As is readily apparent the Sixth Cause of action sets out all of the elements of fraud under New York law,  *see e.g., Chanayil v. Gulati,* 169 F.3d 168, 171 (2d Cir. 1999).

Count VI of the Complaint expressly alleges that Girl Scouts concealed

"the true economic terms and conditions of the RFP and concealing from MDM the changed and waived conditions of the bid" thereby engaging "in a pattern of fraudulent deception and omission upon which MDM relied in good faith to its detriment."  Complaint at para. 109.

By the reference to the "true economic terms and conditions of the RFP" the complaint refers to the plan and design set forth in exhaustive detail in the Complaint and incorporated into the Fraud count.  As the complaint makes clear, Girl Scouts designed the complaint with the plan and intent of directing the bid solely to DPI.  These allegations, set forth in exhaustive detail earlier in the complaint, are among the "true economic terms and conditions of the RFP" that Count VI alleges were concealed.

Paragraph 108 of the Complaint incorporates these earlier allegations. In addition, Count VI make sit clear that the "changed and waived conditions of the bid" were concealed at the outset from MDM and that MDM relied on such omission in structuring the bid.

Count VI makes it clear that MDM relied on such omissions in structuring its bid and because it was unaware that the $40,000 buyout provision and the network connectivity condition would be waived. Complaint at para. 110. By acting in the belief that its actual bid, of necessity, must include the connectivity equipment and the $40,000 buyout cost factors, the Complaint states that MDM relied on Girl Scouts' omission of the fact that the buyout and network connectivity were to be dropped after the bid was awarded. Complaint at paras. 110, 111, 112. MDM alleges that it relied on such omissions in structuring the costs of its bid and that it was the higher bidder because it did not know that the conditions were to be waived. Complaint at para. 115. The Complaint further alleges that Girl Scouts knew that MDM would alter its bid calculation if the buyout figure was to be changed. Complaint at para. 116, and Girl Scouts thus knowingly omitted facts on which it was aware MDM was relying in structuring its bid. Para. 117 expressly states that MDM relied to its detriment on these omitted conditions. Based on these omissions the Complaint expressly states that MDM was damaged by the loss of the contract on the bid which it would have received had it known of the changed conditions. Such damages are expressly stated and calculated as MDM's lost profits in the amount of $189,343.20.

The construction of these allegations makes it clear that MDM alleges that Girl Scouts had the intent to change and waive the network connectivity and $40,000 buyout provisions and that this intent was fraudulently concealed from MDM during the bid process. Complaint at para. 111.

As these paragraphs make clear, the Complaint alleges that the intent to drop these conditions was concealed by Girl Scouts until *after the* bid process was closed. Nowhere does the complaint allege, as Girl Scouts falsely suggests, that their decision to change these conditions of the bid was made only after the contract was awarded. Paragraphs 110 and 111 are structured to assert that such change in conditions was a decision *concealed* by Girl Scouts during the bid process itself:

111.  Girl Scouts concealed the waiver and/or release of these conditions until after it awarded the bid to DPI and after the bid contracts with DPI were consummated.

The very structure of this paragraph is to the effect that Girl Scouts "concealed" such intent until "after it awarded the bid to DPI" and that such intent could have been earlier disclosed to the bidding parties.

Based on the foregoing analysis, a fair reading of the complaint sets forth a cause of action in fraud.  To the extent that certain allegations could be more specifically set forth, the appropriate remedy is leave to amend, not dismissal.

### C.  The Complaint sets forth a claim for breach of the obligation of good faith and fair dealing underlying the bid requests.

In general there exists an obligation to perform in good faith in a bid process.  *Cf., James MacPherson v. Kessef Tov Corp.* 116 A.D.2d 522,523 (1st Dept. 1986).  While case law has not previously addressed the question of good faith in private bid, New York law has long recognized the impropriety of manipulation of bid conditions to favor a single bidder in governmental bids. see e.g., *Matter of Resco Equip. & Supply Corp. v. City Council of City of Watertown*, 34 A D 2d 1088 (4th Dept. 1970).  New York public policy presumes that all bidders stand on an equal footing at the outset of the bid.  *Goldwin-Kent, Inc. v. County of Broome*, 107 Misc. 2d 722; 435 N.Y.S.2d 1011 (Special Term Broome 1981) ("To have accepted the proposal submitted by Goldwin-Kent after the bid opening would have been to give them an unfair advantage over the other bidders.")

A contractual obligation to perform in good faith need not be bilateral but may, until accepted operate as a unilateral promise, that is binding under New York law.  A unilateral contract is one "calls for acceptance in the form of a promise to create a second, bilateral contract".  *Siders v. Odak*, 126 A.D.2d 292, 294 (3d Dept. 1987).  In this context, the complaint alleges that a request for proposals operates as a promise "to provide a fair and level playing field to enable a true low bidder to emerge through competitive bidding."  Complaint at para. 101.  Businesspersons experienced in the field of bid solicitation understand that a request for proposals structured on the basis of a low

winning bid, is a promise reflected in "well-established commercial usage". Complaint at para. 101.

Paragraph 102 of the Complaint sets forth a substantive summary of the myriad conditions imposed by Girl Scouts on the bid that contravene the obligation to perform in good faith:

> 102. …the Girl Scouts structured the RFP to favor a single bidder, DPI, that was placed at a material advantage against other bidders, including MDM, and imposed discriminatory trial conditions, among other acts of bad faith, to favor DPI. Despite express requests by MDM to provide accommodations to enable other bidders to successfully meet the substantive requirements of the RFP, Girl Scouts refused to change the required specifications and failed to answer MDM's express inquires for such accommodations, even where MDM's proposed substitutions would have reduced the Girl Scouts' cost of product. Among other failings to deal in good faith set forth above, despite express knowledge that MDM was prepared to reduce its bid to account for changes in the $40,000 buyout provision, Girl Scouts accepted DPI's bid and consummated the transaction with DPI without giving MDM an opportunity to re-bid after the buyout provision was waived.

Complaint at para. 102. see also, Complaint at paras. 103, 104.

By submitting its bid on reliance on the implied representation that the bid would be a neutral and fair playing field, MDM has acted in reliance on the promise by Girl Scouts to operate a fair bid process. As noted in *Flemington National Bank & Trust Company (N. A.) v. Domler Leasing Corporation*, 65 A.D.2d 29, 36-37 (1st Dept. 1978), where the party acting "has done all that is required of him at the moment the contract springs into existence…that leaves only the promise of the other party unfulfilled." This is the essence of a unilateral contract: the extension of a promise understood by those who act in reliance upon it and the fulfillment of the promise by he who extends the initial offer, in this case an offer by Girl Scouts to submit bids in a process understood by

all participants to be a presumptively fair and honest process.  *See also Reiss v. Financial*

*Performance Corporation,* 279 A.D.2d 13, 28; 715 N.Y.S.2d 29 (1ˢᵗ dept. 2000).

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied or, in the

alternative, the state law claims should be dismissed without prejudice under the

abstention doctrine.

Respectfully submitted,

S/ _____

Bruce I. Afran (BA 8583)
10 Braeburn Drive
Princeton, New Jersey 08540
609-924-2075

Attorney for Plaintiff