HELLER EHRMAN LLP
Joseph Angland (JA-6607)
Kenneth Kirschner (KK-0252)
August T. Horvath (AH-8776)
7 Times Square
New York, New York 10036
Tel.: (212) 832-8300
Fax: (212) 763-7600

Attorneys for Defendant Girl Scouts of the United States of America


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
MDM BUSINESS TECHNOLOGIES, INC.,                                 :
                                                                 :
                          Plaintiff,                             :
                                                                 :   No.: 07-CV-7477 (WHP)
            v.                                                   :
                                                                 :
GIRL SCOUTS OF THE UNITED STATES OF                              :
AMERICA; and DIGITAL PRODUCTS, INC.,                             :
                                                                 :
                          Defendants.                            :
                                                                 :
                                                                 :
-----------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW OF DEFENDANT GIRL SCOUTS OF
THE UNITED STATES OF AMERICA
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

## TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................................. ii

    I.       MDM Has Not Stated a Viable Federal Antitrust Cause of Action ......................... 1

           A.     The Alleged Conduct Cannot Be Characterized As Bid Rigging or Any Other Per Se Unlawful Offense ........................................................... 1

           B.     MDM Has Not Pled the Necessary Elements of a Rule of Reason Offense ........................................................................................................... 5

    II.      MDM Has Not Stated a Claim for Its Non-Antitrust Causes of Action .................. 6

           A.     MDM Fails to Plead the Elements of Fraud ............................................... 7

           B.     The Implied Covenant of Good Faith and Fair Dealing Is Irrelevant to this Case ................................................................................................... 8

Conclusion ............................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005)................................7

*Barrett v. United States Banknote Corp.*, 1992-2 Trade Cas. (CCH) ¶ 69,956 (S.D.N.Y. 1992) ........................................................................................................................4

*Brass v. Am. Film Tech., Inc.*, 987 F.2d 142 (2d Cir. 1993).............................................................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ...............................................6

*Chicago Prof'l Sports Ltd. P'ship v. NBA*, 95 F.3d 593 (7th Cir. 1996)..........................................5

*Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50 (2d Cir. 1997) ..................................................5

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977)..........................................................3, 6

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)..........................................2

*Discon, Inc. v. Nynex Corp.*, 86 F. Supp. 2d 154 (W.D.N.Y. 2000) .................................................6

*Donovan v. Aeolian Co.*, 270 N.Y. 267 (1936)................................................................................7

*Golden Buddha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196 (2d Cir. 1991)........................................................................................................................7

*Goldwin-Kent, Inc. v. County of Broome*, 107 Misc. 2d 722 (Special Term Broome 1981)...........8

*James Cape & Sons Co. v. PCC Construction Co.*, 453 F.3d 396 (7th Cir. 2006).........................4

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) .......................................................2

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 127 S. Ct. 2705 (2007) ..................................3

*MacPherson v. Kessof Tov Corp.*, 116 A.D.2d 522 (1st Dep't. 1986) .............................................8

*Murray v. Xerox Corp.*, 811 F.2d 118 (2d Cir. 1987).......................................................................7

*Nynex Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) ......................................................................5, 6

*Philip Morris, Inc. v. Heinrich*, 1998-1 Trade Cas. (CCH) ¶ 72,061 (S.D.N.Y. 1997)....................3

*Reiss v. Fin. Performance Corp.*, 279 A.D. 2d 13 (1st Dep't. 2000) ..............................................9

*Resco Equip. & Supply Corp. v. City Council of Watertown*, 34 A.D. 2d 1088
    (4th Dep't. 1970)..................................................................................................................8

*SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958 (10th Cir. 1994).......................................................5

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ................................................................6

*Standard Oil Co. v. United States*, 221 U.S. 1 (1911) ........................................................................2

*Standard Oil Co. v. United States*, 337 U.S. 293 (1949) ....................................................................3

*United States v. Arnold, Schwinn & Co.*, 388 U.S. 365 (1967).........................................................5

*United States v. Koppers Co.*, 652 F.2d 290 (2d Cir. 1981) ...............................................................4

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940)........................................................4

**FEDERAL STATUTES**

15 U.S.C. § 1..................................................................................................................................1, 2

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................1

Defendant Girl Scouts of the United States of America ("GSUSA") respectfully submits this Reply Memorandum of Law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim on which relief can be granted.

In its opposition to GSUSA's motion, MDM has finally identified the provision of the Sherman Act under which it seeks to lodge its antitrust claims. However, MDM still has not pled the elements of any recognized cause of action under that provision. Instead, MDM advances a "novel" (meaning inconsistent with settled antitrust definitions and principles) theory under which it asks this Court to create a new type of antitrust "bid rigging" violation. Moreover, to salvage its Complaint—in which it has not pled and cannot plead essential elements of a rule-of-reason violation, such as market power and substantial injury to competition in the marketplace—MDM asks the Court to treat its newly imagined vertical, non-price antitrust violation as per se unlawful, just months after the Supreme Court eliminated per se treatment of even the last remaining form of vertical *price*-related conduct. Finally, in its pendent claims, MDM attempts to treat GSUSA as if it were a governmental agency, saddling it with requirements to conduct "fair" and "neutral" bidding contests that private parties have no obligation to undertake.

## I. MDM HAS NOT STATED A VIABLE FEDERAL ANTITRUST CAUSE OF ACTION

### A. The Alleged Conduct Cannot Be Characterized As Bid Rigging or Any Other Per Se Unlawful Offense

MDM, in its opposition brief, cites for the first time to a specific provision of the Sherman Act under which it lodges its antitrust claims. In its Complaint, MDM cited only to the entirety of the Sherman Act, 15 U.S.C. § 1 *et. seq.* MDM now states that it is asserting a

1

"restraint of trade" under Section 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits agreements that unreasonably restrain trade. *See* Plaintiff's Memorandum of Law in Opposition to Defendant Girl Scouts of the United States of America's Motion to Dismiss ("Opp. Br.") at 7-9.

To begin with, identifying Section 1 as the basis of all of MDM's antitrust claims immediately proves fatal to Count I of MDM's Complaint, which is directed solely at GSUSA and alleges no conspiracy or co-conspirator. There can be no Section 1 claim absent an agreement, and Count I's challenge to GSUSA's unilateral conduct is thus defective on its face. *See Standard Oil Co. v. United States*, 221 U.S. 1, 52-58 (1911); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767-68 (1984) ("Section 1 of the Sherman Act … reaches unreasonable restraints of trade effected by a 'contract, combination . . . or conspiracy' between separate entities. It does not reach conduct that is 'wholly unilateral.'"). Count I therefore cannot set forth a Section 1 violation, and GSUSA can only presume that it has now been abandoned along with Count II, the parallel Donnelly Act count, which also contains no allegations of conspiracy.

Counts III and IV, which do allege an agreement between GSUSA and DPI, are defective for other reasons. Although MDM has related at length the alleged conduct by GSUSA to which it objects, it still has provided no indication of how that conduct constitutes a per se violation of Section 1 of the Sherman Act. With one possible exception that has no relevance here[1], the only agreements that are per se illegal under Section 1 of the Sherman Act are certain horizontal

---

[1] Tying, or the practice of selling a product only on the condition that another product is purchased with it, is subject to a modified per se rule in which the per se rule applies only if the defendant possesses market power in the relevant market. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 15-18 (1984).

agreements—i.e., certain agreements *between competitors*. The per se rules simply do not apply to vertical agreements—i.e., agreements between a buyer and a seller. The Supreme Court ruled in 1977 that with the exception of certain agreements on tying and resale prices (i.e., a seller requiring its buyer to resell products at a specific price), vertical agreements are governed by the rule of reason. *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977) (holding most vertical non-price conduct subject to rule of reason). In 2007, the Supreme Court ruled that even resale price maintenance, the most competitively sensitive form of so-called "vertical price fixing," is governed by the rule of reason rather than the per se rule. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 127 S. Ct. 2705 (2007).

There is thus no conceivable argument that the conduct challenged here is subject to a per se rule. The only agreement that MDM challenges is vertical conduct—an agreement between GSUSA and DPI, which are not competitors and which have only a supplier-customer relationship. Because no vertical agreements (with a partial and here irrelevant exception for tying) are subject to the per se rule, that ends the inquiry. Moreover, the per se rule would have been inapplicable even before the Supreme Court limited its application to vertical agreements beginning in 1977; even under pre-1977 law, an agreement by a buyer to favor one seller over others by buying a product from that seller was not per se illegal. *See Standard Oil Co. v. United States*, 337 U.S. 293, 306-07 (1949) (holding the more restrictive vertical non-price arrangement of exclusive dealing subject to the rule of reason test).

MDM seeks to avoid these first principles of antitrust law by asking the Court to recognize a "novel" theory under which the alleged conduct would constitute per se illegal bid rigging. MDM's argument, however, must confront the reality that every bid-rigging case that it cites in which the per se rule was applied involved a horizontal agreement. *See Philip Morris,*

*Inc. v. Heinrich*, 1998-1 Trade Cas. (CCH) ¶ 72,061 (S.D.N.Y. 1997) (competing providers of cardboard retail displays allegedly rigged bids); *Barrett v. United States Banknote Corp.*, 1992-2 Trade Cas. (CCH) ¶ 69,956 (S.D.N.Y. 1992) (competing auction bidders on rare banknotes allegedly rigged bids); *James Cape & Sons Co. v. PCC Construction Co.*, 453 F.3d 396 (7th Cir. 2006) (competing construction companies allegedly rigged bids); Opp. Br. at 15 (conceding that "traditional bid-rigging analysis has hitherto concerned bids rigged by agreement among competing bidders").

The principles governing application of the per se rule, discussed above apply to all sales, whether at a listed price or pursuant to a bid. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223-24 (1940) (finding *horizontal* agreements to affect price unlawful even where the competitors are bidders lacking total control over the price of the commodity). For example, if steel companies agreed to sell steel only for a given price, that would be a classic, per se illegal price-fixing agreement, because competing sellers would be agreeing on price. The result would be the same if the steel companies decided to accept bids and agreed to require a minimum price in their respective bidding processes. Again, competing sellers would have illegally agreed on price. Similarly, if automobile companies agreed not to pay above a certain price for steel, that would be a per se illegal agreement, because competing buyers would be agreeing on price. The same would be true if the automobile companies "rigged" their response to requests for bids by the steel companies—e.g., by agreeing not to bid above a certain amount, or by agreeing that only one automobile company would seek to win the bid with each steel company (thus denying the steel company the bids of competing buyers). The overriding principle is that it is only agreements between competitors in the bidding process that can be per se illegal. *See Socony-Vacuum*, 310 U.S. at 223-234; *United States v. Koppers Co.*, 652 F.2d 290, 294 (2d Cir. 1981)

4

("In cases involving behavior such as bid rigging, which has been classified by courts as a per se violation, the Sherman Act will be read as simply saying: 'An agreement *among competitors* to rig bids is illegal.'") (emphasis added).  No case that MDM cites, or that GSUSA can find, applies a per se rule to an agreement by a purchaser to favor one bidder over another.  *See Nynex Corp. v. Discon, Inc.*, 525 U.S. 128, 136-37 (1998) (holding that a customer does not commit a per se violation of the antitrust laws by favoring one supplier over another, even if it does so by agreement with the favored supplier or for purposes that are otherwise illegal, unsavory or improper).

        **B.**      <u>**MDM Has Not Pled the Necessary Elements of a Rule of Reason Offense**</u>

As set forth above, MDM has not pled bid rigging or any other per se offense.  Because of other fatal defects in its Complaint, the failure to plead a per se offense dooms MDM's claims.  To state a claim under the rule of reason, MDM would need to have set forth, at the pleading stage, a relevant market and plausible allegations that GSUSA possesses market power in such a market.  *Chicago Prof'l Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 600 (7th Cir. 1996) ("Substantial market power is an indispensable ingredient of every claim under the full Rule of Reason."); *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 965 (10th Cir. 1994) ("Rule of reason analysis first asks whether the offending competitor . . . possesses market power in the relevant market where the alleged anticompetitive activity occurs.").  MDM completely ignored the necessity of doing this, both in its Complaint and Opposition Brief.  For the reasons set forth in GSUSA's moving papers, it would be impossible for MDM to meet this burden.  It is patently obvious that the Girl Scouts headquarters does not possess market power sufficient to control the market for photocopying services in New York City or any plausible geographic market.

In addition to showing market power, the plaintiff in a rule of reason case must allege how the challenged conduct operates to have a substantially adverse effect on competition in the

5

marketplace. *See Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 59-60 (2d Cir. 1997); *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 374 n.5 (1967), *overruled on other grounds by Cont'l T.V.,* 433 U.S. at 58-59.  This is distinct from alleging that there was harm to one competitor, i.e. MDM.  Allegations that one competitor was harmed "does not automatically show injury to competition." *Nynex*, 525 U.S. at 139.  MDM must instead show an overall impact in the marketplace, because the antitrust laws are for the protection of competition, not individual competitors. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).  And the impact must be in a properly defined relevant market and not a one-customer "market" such as the supply of photocopying services to GSUSA, an approach soundly rejected by antitrust courts. *See Discon, Inc. v. Nynex Corp.*, 86 F. Supp. 2d 154, 161 (W.D.N.Y. 2000) ("it is firmly settled that a product market ordinarily cannot be defined in terms of the purchases of a single buyer").

With no alleged relevant market and no allegation of market power or substantial adverse impact on competition, MDM's arguments regarding whether the conduct it alleges GSUSA and DPI to have engaged in are anticompetitive under the rule of reason are irrelevant.  Although the lack of anticompetitive effect of this conduct is established by *Discon* and by *Brunswick*, 429 U.S. at 488, as set forth in GSUSA's moving brief, the Court need not reach these arguments.  Having failed to meet the threshold requirement of alleging a relevant market and market power, MDM's antitrust claims should be dismissed under both per se and rule of reason theories.

## II.   MDM HAS NOT STATED A CLAIM FOR ITS NON-ANTITRUST CAUSES OF ACTION

MDM concedes that if its federal antitrust claims are dismissed, then this Court should dismiss the pendent state law claims for lack of jurisdiction. *See* Opp. Br. at 18-19.  There are

also independent substantive reasons to dismiss both the fraud claim and the claim for breach of the implied covenant of good faith and fair dealing.

      A.      **MDM Fails to Plead the Elements of Fraud**

MDM has not meaningfully addressed the fact that its fraud count does not contain necessary elements for the pleading of fraud in New York, most particularly an identification of the specific representation or omission by GSUSA that is alleged to have deceived MDM. Instead, MDM repeats unacceptably vague allegations that GSUSA concealed "the true economic terms and conditions of the RFP and … the changed and waived conditions of the bid." Opp. Br. at 19. MDM now avers that what it meant by this is that GSUSA did not inform MDM that it "designed the [RFP] with the plan and intent of directing the bid solely to DPI." *Id.* None of these averments approaches the level of specificity required in a fraud claim, as set forth fully in GSUSA's moving brief. Pleading a fraud claim requires the allegation of a specific misrepresentation of material fact, including when and by whom it was made. *See Golden Buddha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 202 (2d Cir. 1991); *Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir. 1987). Where fraud by omission is alleged, the plaintiff must similarly allege conduct similar to a verbal half-truth, i.e., a context of specific affirmative representations giving rise to a duty to disclose additional facts to comprise the whole truth on a specific occasion. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993); *Donovan v. Aeolian Co.,* 270 N.Y. 267, 272 (1936). MDM's vague allegations relating to a purported course of conduct over several months do not suffice under these precedents.

### B. <u>The Implied Covenant of Good Faith and Fair Dealing Is Irrelevant to this Case</u>

MDM's claim under the implied covenant of good faith and fair dealing is based on a fundamental misapprehension of the relevant law. The implied covenant comes into play only when a contract exists between two parties and an issue of performance or breach arises with respect to that contract. Because there was no contract between MDM and GSUSA relating to the conduct MDM challenges, no covenant arose.

MDM advances two theories, both unavailing, as to why this contract doctrine should apply in the present case where there was no contract relevant to the complained-of actions in effect between the parties. First, MDM asserts that a private entity that seeks bids is required to structure the bid process in a "neutral" way so as not to favor any particular competitor. There is no legal support for this position. Governmental entities sometimes enact statutes imposing upon themselves the obligation to place contracts up for bidding in a neutral manner, and also often to accept the lowest bid that satisfies their requirements. *See* Opp. Br. at 21, *citing Resco Equip. & Supply Corp. v. City Council of Watertown*, 34 A.D. 2d 1088 (4th Dep't. 1970) *and Goldwin-Kent, Inc. v. County of Broome*, 107 Misc. 2d 722 (Special Term Broome 1981). Often, governmental entities are also under a requirement that specified types of contract must be put up for competitive bidding in the first place. None of these requirements applies to a private entity.

GSUSA was under no requirement to place its photocopying requirements up for competitive bid. If GSUSA wanted to select DPI from the outset, it could simply have done so. Having decided to solicit bids, GSUSA was under no obligation to structure the bidding in any particular way or according to any principles. And, however it structured the bidding, GSUSA was under no obligation to select the lowest acceptable bidder as its final choice, as a governmental entity might be. GSUSA would have been entirely within its rights to use the

8

responses to the RFP to examine the responsiveness and capabilities of the various bidders and the personal characteristics of their staff, and to choose—if it so desired—the most expensive bidder. GSUSA was also free to base its decision upon personal likes or dislikes, or whim. MDM cites no law governing bidding practices by private parties that would permit MDM to read any implied covenant into GSUSA's RFP or would create any obligation on the part of GSUSA that could be the basis for MDM's claims.

Second, the fact that MDM submitted a bid does not impose any implied covenant on GSUSA under a "unilateral contract" theory. None of the authority cited by MDM supports such a conclusion; all of it is drawn from unrelated areas of law. *MacPherson v. Kessof Tov Corp.*, 116 A.D.2d 522 (1st Dep't. 1986), dealt with real estate foreclosure sales. The case concerned whether a contract buyer of real property has a duty not to bid against the contract seller in a foreclosure sale, with the plaintiff alleging that the preexisting sales contract—not the bidding process—providing the basis for the purported implied covenant (which the court found did not exist). *Reiss v. Financial Performance Corp.*, 279 A.D. 2d 13, 28 (1st Dep't. 2000), concerned the interpretation of corporate stock purchase warrants. The case addressed whether stock warrants contain an implied requirement for proportional adjustment of the number of shares eligible for purchase in the event of a stock split, and nothing in the opinion makes any reference to an implied covenant of good faith or fair dealing.

In any event, under basic principles of contract law, if an implied covenant of good faith and fair dealing were associated with an offer that operates as a binding unilateral promise, that promise and any implied covenant would bind only the offeror, not the recipient. MDM may have committed *itself* to performing in good faith when it submitted its bid to GSUSA, but GSUSA, having not accepted the bid or obligated itself to perform, made no such commitment.

9

Thus, no authority cited by MDM supports its assertion that a non-governmental entity is obliged to conduct a bidding process in a neutral or unbiased manner. MDM asserts that "[b]y submitting its bid on reliance on the implied representation that the bid would be a neutral and fair playing field, MDM has acted in reliance on the promise by Girl Scouts to operate a fair bid process." Opp. Br. at 22. But MDM cannot point to any such implied promise. The law governing private bidding practices does not permit such a promise to be read into a private RFP as if it were implied. GSUSA was under no contractual obligation to MDM that would carry with it any implied covenant to act with good faith or fair dealing. And, even such a covenant would not encompass an implied promise to structure bidding under the RFP in what MDM would consider a fair or neutral manner. Admitting again that its theory is a "novel" one that "does not appear to have been made the subject of any New York decision," Opp. Br. at 19, MDM again confuses a case of first impression with one that is simply meritless.

## Conclusion

For the reasons set forth above, the Court should dismiss this action in its entirety for failure to state a claim and provide such other and further relief to GSUSA, including costs and attorneys fees, as it deems appropriate.

Dated: New York, New York
      January 11, 2008

                                      HELLER EHRMAN LLP
                                      By:_____/S/_____
                                             August T. Horvath (AH-8776)
                                      Joseph Angland (JA-6607)
                                      Kenneth Kirschner (KK-0252)
                                      7 Times Square
                                      New York, New York 10036
                                      Tel.: (212) 832-8300
                                      Fax: (212) 763-7600

                                      Attorneys for Defendant Girl Scouts of the United States of America